UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIVN WORLDWIDE LTD., a Mauritius limited company,<br><br>Plaintiff,<br><br>v.<br><br>VUBIQUITY INC., a Delaware corporation; and DOES 1 through 10, inclusive<br><br>Defendant. | Case No. : 2:21-cv-09589-AB-KS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [13]** |

Before the Court is Defendant Vubiquity Inc.'s ("Defendant") Partial Motion to Dismiss First Amended Complaint ("Mot.," Dkt. No. 16). Plaintiff LIVN Worldwide Ltd. ("Plaintiff") filed an opposition ("Opp'n." Dkt. No. 21), and Defendant filed a reply ("Reply," Dkt. No. 22). For the following reasons, the Court **GRANTS** Defendant's Motion.

**I.   BACKGROUND**

Plaintiff commenced this action on December, 21, 2021, and filed the operative First Amended Complaint ("FAC," Dkt. No. 13) on January 24, 2022, alleging as follows. Plaintiff was and is the exclusive licensee authorized to distribute and sell the 60-episode series titled Martial Universe in the United States. FAC ¶ 10. In 2019, Plaintiff engaged in preliminary discussions with Defendant about selling Martial Universe on iTunes under a distribution agreement with Plaintiff. *Id.* ¶ 13. As part of

1.

the preliminary discussions, Plaintiff provided master copies of all 60 premium episodes of the Series for Defendant to assess. *Id.* Plaintiff sought for Defendant to pay a license fee per episode but Defendant declined and further indicated that it had no intent to market the content for sale on iTunes. *Id.* ¶ 14. Consequently, negotiations between the parties ceased and no agreement was ever reached. *Id.* At no time during the negotiations was Defendant granted any right or license to upload the episodes, nor did Plaintiff provide Defendant with images related to the content. *Id.* ¶ 15.

However, in 2020, without Plaintiff's permission, Defendant uploaded the content on the iTunes platform for sale and download by the public. *Id.* ¶ 27. In the process of doing so, Defendant generated images from the Series, uploaded and transmitted such images to iTunes, and knowingly provided false copyright and release date information for the Series. *Id.*

Defendant also unilaterally established drastically low bargain-rate prices for the series without any value for the premium nature of the content. *Id.* ¶ 24. Additionally, Defendant failed to price differentiate between high and standard definition content and did nothing to advertise or promote the sale of the Martial Universe content. *Id.* ¶¶ 25, 27.

Based on these factual allegations, Plaintiff asserts the following six causes of action: (1) Copyright Infringement, 17 U.S.C. § 501; (2) Unfair Competition, False Endorsement, False Association, and False Designation of Origin Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A); (3) False Advertising Under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) Violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202; (5) Fraud; and (6) Violation of California Business and Professions Code § 17200, *et seq.*

Now, Defendant moves to dismiss part of Plaintiff's First cause of action, and the Second, Third, Fourth, Fifth, and Sixth Causes of Action in their entirety.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by moving to dismiss it for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must allege enough facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id*. The complaint must also be "plausible on its face," meaning that it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In addition, Rule 9(b) imposes a heightened pleading requirement for claims sounding fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To plead with particularity, a plaintiff must include "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). A motion to dismiss a complaint under Rule 9(b) for failure to plead with particularity is the "functional equivalent" of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, and dismissal on either ground operates the same way. *Vess*, 317 F.3d at 1107.

When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94

(2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

### III. DISCUSSION

Defendant argues that Plaintiff's Second, Third, Fifth and Sixth Causes of Action are preempted by the Copyright Act, 17 U.S.C. § 301(a). Defendant also argues that Plaintiff failed to plead plausible facts supporting the elements of its Fourth Cause of action for violation of the DMCA. Lastly, Defendant argues that Plaintiff's First Cause of Action for copyright infringement is overbroad. The Court will address each issue in turn.

#### A. Plaintiff's Second and Third Causes of Action Under the Lanham Act are Not Cognizable.

Defendant first argues that Plaintiff's Lanham Act claims are preempted by the Copyright Act's express preemption provision—17 U.S.C. § 301(a)—and *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).

However, 17 U.S.C. § 301(a) establishes that the Copyright Act preempts "equivalent right[s] . . . *under the common law or statutes of any State.*" 17 U.S.C. § 301(a) (emphasis added). By its terms, this section preempts state law rights, and the Lanham Act is a federal statute. Defendant argues that in *Dastar Corp v. Twentieth Century Fox Corp.*, 539 U.S. 23 (2003), the Supreme Court extended the Copyright Act's preemption rules to the Lanham Act. However, *Dastar* does not directly deal with preemption issues. In fact, the preemption statute, 17 U.S.C. § 301, does not appear anywhere in the case. Rather, the Court in *Dastar* simply interpreted the Lanham Act and distinguished it from the law of copyright to find that rights within the scope of copyright do not also give rise to Lanham Act claims. This is not the same thing as preemption. Nevertheless, the reasoning in *Dastar* does apply in this case, as discussed below.

Plaintiff's second claim is for unfair competition, false designation of origin and false and misleading representation of fact, which Plaintiff contends was likely to

4.

cause confusion or to deceive as to the origin, sponsorship, or approval of Defendant's use of the Martial Universe episode, in violation of Section 43(a) of the Lanham Act. FAC ¶ 47. In relevant part, the Lanham Act establishes a cause of action against someone who "on or in connection with any goods or services…uses in commerce any word, term, name…or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that is "likely to cause confusion…as to the origin, sponsorship, or approval of his or her goods." 15 U.S.C. § 1125(a)(1)(A).

The Court in *Dastar* examined the meaning of the term "origin of goods" and held that "the phrase refers to the producer of the tangible goods that are offered for sale, not to the author of any idea, concept, or communication embodied in those goods." 539 U.S. at 37. In other words, the "producer of the tangible goods" is the person who directly makes the goods available for purchase. *Id*. at 24. Further, the Court stated that while a purchaser of a communicative product, such as a film, may in fact care about the creator of the content therein, the Lanham Act should not be stretched to cover such matters, as doing so would cause the Act to conflict with the law of copyright, which addresses that subject directly. *Id*. at 32-33.

Here, Plaintiff alleges in its second cause of action that Defendant's unauthorized use of Plaintiff's name and likeness, and the name and likeness of the actors in the Martial Universe episodes, constitutes unfair competition, false designation of origin, and false and misleading representation of fact that was likely to cause confusion or to deceive as to the origin, sponsorship, or approval of Defendant's use of the Martial Universe episodes, in violation of the Lanham Act. FAC ¶ 47.

However, the Lanham Act prohibits causing confusion as to the "origin of goods," and under *Dastar*'s interpretation of "origin of goods," the origin of the Martial Universe episodes on the iTunes platform is not determined by who originated or created the ideas behind the Series (Plaintiff). Instead, the origin of the episodes, as it relates to the Lanham Act, is the producer of the Series on iTunes for sale, which is

5.

Defendant because Defendant made the content available for sale on the platform. But neither of Plaintiff's Lanham Act claims rely on allegations that Defendant caused confusion about who placed the Series on iTunes. Instead, Plaintiff's Lanham Act claims assert that Defendant incorrectly identified the copyright owner of the Series, which is not within the scope of the Lanham Act.

Plaintiff's third claim is for false advertising under Section 43(a)(1)(B) of the Lanham Act. In relevant part, this section establishes a cause of action against someone who "on or in connection with any goods or services…uses in commerce any word, term, name…or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" which "misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods." 15 U.S.C. § 1125 (a)(1)(B).

In *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008), Sybersound brought Lanham Act claims against the defendant, alleging that the defendant's misrepresentation of its compliance with copyright licensing requirements for karaoke records it distributed related to the "nature, characteristics, and quality" of the karaoke products. However, in order to avoid overlap between the Lanham and Copyright Acts, the Ninth Circuit declined to construe the Lanham Act to cover misrepresentations about copyright licensing status. *Id.* The Court determined that the "nature, characteristics, and quality" of a good under the Lanham Act are more properly construed to mean qualities of the good itself. *Id.* Such qualities include the visual and audio quality of the good. *Id.*

Here, LIVN alleges in its third cause of action that "Defendant's unlawful use of Plaintiff's name in connection with Series and episodes on the iTunes platform, along with inaccurate release date information, contains false and misleading statements about the nature and characteristics of the products that Defendant had available for sale." FAC ¶ 56. Like the plaintiff in *Sybersound*, LIVN's claims do not concern the visual or audio qualities of the Martial Universe episodes. Instead,

6.

Plaintiff's claim concerns the Defendant's misrepresentation of the status of copyright ownership of the episodes. Based on Ninth Circuit's reasoning in *Sybersound*, Plaintiff's claim is an underlying copyright infringement issue and should be treated as such. For the same reasons, Plaintiff's claim concerning the inaccurate release date information is insufficient to constitute the "nature, characteristics, and quality" of the Series as well.

For the foregoing reasons, Plaintiff's Lanham Act claims (counts 2 and 3) are not cognizable as Lanham Act claims and are therefore **DISMISSED**.

### B. Plaintiff's Fifth Cause of Action for Fraud is Preempted by the Copyright Act.

Defendant also moves to dismiss Plaintiff's fraud claim as preempted by the Copyright Act. As noted above, 17 U.S.C. § 301(a) provides that "exclusive rights within the general scope of copyright . . . or equivalent right in any such work under the common law or statutes of any State" are preempted by the Copyright Act. 17 U.S.C. § 301(a). Fraud is a state law cause of action, so preemption is in issue.

For its fraud claim, LIVN alleges that when Plaintiff provided Defendant with master copies of the Series, "Defendant knowingly made false representations that Defendant was going to use the Martial Universe episodes for due diligence and technical assessment." FAC ¶ 78. However, "without having ever received copyright management information, metadata or content images for display in connection with sale of Martial Universe and its individual episodes," Defendant fraudulently, and without permission from Plaintiff, (1) generated images from the Series for the purpose of selling the Series on iTunes, (2) knowingly provided false copyright ownership and release date information with the intent to induce the public to purchase the content, (3) priced the Series and its episodes at drastically reduced non-premium rates, and (4) failed to price differentiate between high and standard definition content. *Id.* ¶ 81. Plaintiff argues that these actions are independent of Defendant's copying of the Series on iTunes and that therefore, this fraud claim is not

preempted by copyright law. *See* Opp'n at 8.

The Ninth Circuit has articulated a two-part test to determine whether a state law claim is preempted by copyright law. Under this test, the state law claim is preempted if (1) the content of the protected right falls within the subject matter of copyright, as described in 17 U.S.C § 102, and (2) the right asserted under state law is equivalent to the exclusive rights contained in section 106 of the Copyright Act. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001).

### 1. Plaintiff's Fraud Claim Falls Within the Subject Matter of the Copyright Act.

The first part of the preemption test is to determine whether Plaintiff's fraud claim falls within the subject matter of copyright. As applicable, the Copyright Act protects works of authorship that include literary works, musical works, motion pictures and other audio visual works, architectural works, etc. 17 U.S.C. § 102(a). Here, LIVN asserts rights over a television series, which falls under the "motion pictures and other audiovisual works" category of 17 U.S.C § 102. In fact, Plaintiff agrees that this element is satisfied. Therefore, Plaintiff's claim falls within the subject matter of the Copyright Act.

### 2. Plaintiff's Fraud Claim Asserts Rights that are Equivalent to the Rights Contained in Section 106 of the Copyright Act.

The second part of the preemption test is to determine whether the right Plaintiff asserts under state law is equivalent to the exclusive rights contained in section 106 of the Copyright Act. 17 U.S.C. § 106. "Section 106 provides a copyright owner with the exclusive rights of reproduction, preparation of derivative works, distribution, and display." *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1143 (9th Cir. 2006) (citation omitted). Thus, "when a plaintiff's claim relies solely on defendant's use of copyrighted material—that is, the reproduction, performance, distribution, or display of the work—the claim is preempted." *McCormick v. Sony Pictures Entertainment*, 2008 WL 11336160, at *9 (C.D. Cal. 2008). "To survive

preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action." *Hemlock Hat Company, Inc. v. Diesel Power Gear, LLC*, 2020 WL 7013585, at 5 (S.D. Cal. Nov. 25, 2020); *see also McCormick*, 2008 WL 11336160, at 9 (while a fraud cause of action requires the additional element of misrepresentation, "[i]n order to survive preemption, the misrepresentation must be based on a core of allegations dissimilar from those on which the copyright infringement claim is based.")

Plaintiff's fraud claim is grounded on Defendant's unauthorized use, reproduction and distribution of the Series. Plaintiff goes into detail about what Defendant did or did not do with the Series, however, its fraud claim is ultimately based on Defendant's use of the work and how the defendant chose to distribute it. Plaintiff's claim is equivalent to the exclusive rights contained in section 106 of the Copyright Act, thereby satisfying the second requirement of the two-part test. Additionally, although Plaintiff mentions in this claim that Defendant made misrepresentations about using the Series for mere technical assessment, the core of Plaintiff's fraud claim is based on the same allegations made in the copyright infringement claims: that Defendant reproduced, uploaded, and distributed the Martial Universe series without Plaintiff's authorization. Insofar as Plaintiff's fraud claim is based on how Defendant priced the series, such a claim is not adequately pled. For example, Plaintiff has not pled what Defendant concealed or misrepresented, nor has Plaintiff pled its fraud claim with particularity as required by Fed. R. Civ. P. 9(b). Furthermore, that Defendant allegedly mis-priced the Series goes to Plaintiff's damages for copyright infringement, and because the gravamen of the claim is copyright infringement, this pricing allegation is insufficient to distinguish the claim from copyright. For these reasons, Plaintiff's fraud claim, insofar as it may be adequately pled, is preempted by the Copyright Act, and is **DISMISSED**.

### C. Plaintiff's Sixth Cause of Action for Violation of California Business and Professions Code § 17200 is Preempted by the Copyright Act.

California Business & Professions Code § 17200 prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice." Unfair competition claims are a state cause of action, so the aforementioned two-part test for preemption applies here. "[T]o the extent that a claim for unfair competition is not qualitatively different from a copyright claim, it is preempted by federal copyright law." *Lanard Toys Ltd. v. Novelty Inc.*, 511 F.Supp.2d 1020, 1030 (C.D. Cal. 2007) (citing *Fisher v. Dees*, 794 F.2d 432 (9th Cir.1986).)

For this claim, Plaintiff makes the same allegations set forth above: that Defendant reproduced, uploaded, and distributed the Series without Plaintiff's authorization. FAC ¶ 93. Additionally, Plaintiff states that Defendant unlawfully, and without authorization, priced the Series at reduced non-premium rates, failed to price differentiate between high and standard definition content, and failed to market and promote the content on iTunes. *Id*. Plaintiff argues that these acts that devalued the Series are separate from Defendant's acts of copying, uploading, reproducing, and displaying the content for sale. *See* Opp'n at 9. However, Plaintiff alleges these same set of facts in its copyright infringement claim, *see* FAC ¶¶ 37-39, and as indicated, these allegations go to damages for copyright infringement and are not sufficient to sustain a separate claim under § 17200. Consequently, for the same reasons mentioned in the previous section, Plaintiff's unfair competition claim is preempted and is therefore **DISMISSED**.

### D. Plaintiff Fails to Allege the Necessary Facts to Establish Its Fourth Claim for Violation of the Digital Millennium Copyright Act.

Section 1202(a) of the DMCA states that "no person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement— (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a). Section

1202(c) includes in its definition of "copyright management information" ("CMI") the name of, or other identifying information about, the copyright owner of the work, as conveyed in connection with the work. 17 U.S.C. § 1202(c).

Thus, § 1202(a) requires that the plaintiff "plausibly allege that the defendant knowingly provided false copyright information *and* that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Krechmer v. Tantaros*, 747 Fed.Appx. 6, 9 (2d Cir. 2018). In *Krechmer v. Tantaros*, the plaintiff's DMCA claim failed because it merely alleged that the defendant provided false information about the copyright owner of a book the defendant published. *Id*. at 10. The plaintiff's claim did not amount to a plausible allegation that the defendant knew that the copyright information was false and that the defendant intended to conceal valid CMI. *Id*.

In this case, Plaintiff alleges that:

> Defendant knowingly reproduced, distributed and publicly displayed a work of art, the Martial Universe content, with false copyright management information for the purposes of inducing and enabling iTunes subscribers to purchase and download the content, and without the authority of Plaintiff, uploaded and distributed copies of the work on the iTunes platform with false and altered copyright management information, all in violation of 17 U.S.C. Code § 1202 of the Digital Millennium Copyright Act.

FAC ¶ 72. Plaintiff also alleges that Defendant's use of inaccurate release dates for the series violated the DMCA. *Id.* ¶ 68.

Defendant moves to dismiss the DMCA claim on three basis: first that some of the information that Plaintiff's DMCA claim relies upon is not CMI; second, that Plaintiff has failed to plead sufficient facts to render its claim plausible; and third, that Plaintiff has failed to allege it has standing to bring these claims.

Defendant is correct that Plaintiff's claims based on Defendant's use of a false

11.

release date of the Series is outside the scope of CMI, as defined by section 1202(c). The act does not mention anything about release dates or airing dates in its definition of CMI. Consequently, this allegation cannot support a DMCA claim. However, Plaintiff's claim that Defendant distributed false information about the copyright owner of the Series does fall under § 1202(c)(3). Thus, Defendant's allegedly incorrect identification of Plaintiff as the copyright owner of the Series is considered to be false CMI, and this can support a DMCA claim. But, Plaintiff has not alleged facts sufficient to plausibly establish that Defendant *knowingly* distributed that false CMI with the intent to induce infringement. Plaintiff argues that by distributing false copyright ownership information, Defendant had to have done so with the intent to induce and enable iTunes subscribers to purchase and download the content, thereby satisfying the intent requirement of section 1202(a). FAC ¶ 72. However, "formulaic recitation of the elements of a cause of action, including allegations regarding a defendant's state of mind, are not sufficient to satisfy Rule 8." *Morgan v. Associated Press*, 2016 WL 6953433, at 3. For example, the facts as alleged do not plausibly establish that Defendant falsely identified the copyright owner of the Series *with the intent* to induce or enable infringement, because falsely identifying a copyright owner does not seem to further, or have any correlation with, iTunes subscribers buying the series, or with any sort of infringement in this case. In other words, regardless of who Defendant said the copyright owner of the Series was, it is not plausible that the number of purchasers and downloaders of the content would change. Consequently, Plaintiff fails to allege necessary facts to establish a DMCA claim.

Finally, Plaintiff failed to respond to Defendant's argument that it has failed to plead facts sufficient to establish standing, that is, facts showing that it was injured as a result of the alleged violation, *i.e.*, that it was injured by the inclusion of Plaintiff's name as opposed to its licensor's name, or the addition of nothing at all. *See* 17 U.S.C. § 1203(a). The Court deems Plaintiff's failure to respond to this ground as consenting to dismissal on this basis. *See* Local Rule 7-12.

For all of these reasons, Plaintiff's DMCA claim is **DISMISSED**.

### E. Plaintiff's First Claim for Copyright Infringement is Dismissed in Part.

To establish a prima facie case for a direct copyright infringement claim, a plaintiff must show (1) ownership of a valid copyright; (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act; and (3) causation. *Perfect 10, Inc., v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). Section 106 of the Act says that the owner of a copyright has the exclusive right to reproduce and to authorize reproduction of the copyrighted work in copies, to distribute and to authorize distribution of copies of the copyrighted work to the public by sale or other transfer of ownership, and to display and to authorize the displaying of copyrighted work publicly. *See* 17 U.S.C. § 106.

Defendant argues that insofar as Plaintiff claims its distribution rights were violated based on Defendant "making available" the Series on iTunes and based on iTunes users streaming the series, it fails because these allegations cannot satisfy the second element.

With respect to exclusive distribution rights, the Ninth Circuit requires that the defendant actually distribute, or disseminate, the work, and not just "make it available" for someone else to distribute. *See SA Music, LLC v. Amazon.com, Inc.*, 2020 WL 3128534 at 5 (W.D. Wash. June 12, 2020) (discussing "make available" jurisprudence and concluding that a purported right to "make available" is not one of the exclusive rights granted by the Copyright Act); *c.f. VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 736 (9th Cir. 2019) (notion that "Copyright Act's display right encompasses an exclusive right to 'make available for display' [is] a position neither supported by the statute nor embraced by this court"). In other words, "because downloading from a digital store…occurs only after the customer pays for the download, the distribution requirement of § 106 is not satisfied by simply making the copy available for sale." *SA Music, LLC,* 2020 WL 3128534 at 4. Here, Plaintiff

alleges are that Defendant made the Series available for sale on the iTunes platform where subscribers made the decision to purchase the Series. Under Ninth Circuit precedent, this does not constitute "distribution." Consequently, Plaintiff's exclusive distribution rights were not violated based on a "making available" theory.

Plaintiff asserts that its copyright infringement claim is not grounded in Defendant merely "making available" unauthorized copies of the Series on iTunes. *See* Opp'n at 10. Relatedly, Plaintiff appears to concede that it is not asserting claims against Defendant for iTunes users streaming the Series. On that basis, to the extent that Plaintiff claims that its distribution rights have been violated based on a "making available," theory, or based on iTunes users downloading the series, such a claim is **DISMISSED**.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss as follows:

- Plaintiff's first cause of action for copyright infringement is **DISMISSED IN PART** as discussed above.
- Plaintiff's second and third causes of action for unfair competition and false advertisement under the Lanham Act are not cognizable and are **DISMISSED** on that basis.
- Plaintiff's fourth cause of action for violation of the Digital Millennium Copyright Act fails to allege necessary facts to establish a DMCA claim, and is **DISMISSED**.
- Plaintiff's fifth and sixth causes of action for fraud and violation of California Business and Professions Code § 17200 are preempted by copyright law and are **DISMISSED**.

Defendant contends, and Plaintiff does not dispute, that it brought the issues ruled on herein to Plaintiff's attention in conjunction with the original Complaint,

before Plaintiff filed the FAC. *See* Mot. 1:18-21. Despite this, Plaintiff filed a First Amended Complaint that did not cure the deficiencies pointed out herein. Furthermore, given the facts actually pled, and the substance of Plaintiff's opposition, the Court finds that amendment would be futile as to the Lanham Act claims, the DMCA claim (given Plaintiff's implicit concession on standing), and the Fraud and § 17200 claims insofar as they are based on rights equivalent to those governed by the Copyright Act. The Court denies leave to amend those claims.

However, Plaintiff may attempt to amend the Fraud and § 17200 claims insofar as it can do so *on bases independent of its copyright claim*s. Any such amended complaint must be filed within 14 days of this order, otherwise these claims will be deemed abandoned.

Defendant's cursory request to strike damages other than actual damages under 17 U.S.C. § 504(b) is denied because Defendant has not fully explained this aspect of the Motion, and given that the Court has granted Plaintiff a narrow opportunity to amend the Fraud and § 17200 claims. However, clearly, insofar as the dismissal of certain claims renders some damages unavailable, Plaintiff will not be able to pursue them.

**IT IS SO ORDERED.**

Dated:  **July 22, 2022**

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE