**AVYNO LAW P.C.**
Jennifer H. Hamilton, Esq. (SBN: 220439)
Email: jhh@avynolaw.com
Jan A. Sundberg, Esq. (SBN: 169186)
Email: jas@avynolaw.com
Shawn B. Hussain, Esq. (SBN: 315872)
Email: sbh@avynolaw.com
6345 Balboa Blvd., Suite 312, Building I
Encino, CA 91316
Tel.: (818) 654-8840
Fax: (818) 332-4205

Attorneys for Plaintiff LIVN Worldwide Ltd.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| LIVN Worldwide Ltd., a Mauritius limited company,<br><br>              Plaintiff,<br><br>       vs.<br><br>Vubiquity Inc., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>              Defendants. | **CASE NO.: 2:21-cv-09589-AB-KS**<br><br>**SECOND AMENDED COMPLAINT FOR:**<br>1. Copyright Infringement<br>2. Fraud<br>3. Violation of California Business and Professions Code § 17200, et. seq.<br><br>**DEMAND FOR TRIAL BY JURY** |

1

SECOND AMENDED COMPLAINT

Plaintiff LIVN Worldwide Ltd. ("Plaintiff" or "LIVN"), by and through its counsel, Avyno Law P.C., in its complaint against Vubiquity Inc. ("Defendant" or "Vubiquity"), alleges as follows:

## PARTIES

1.      Plaintiff is and was at all times relevant to this litigation, a Mauritius limited company, with its corporate offices in the nation of Mauritius.

2.      Defendant was at all times relevant to this litigation, a Delaware limited liability company, with its corporate offices in Los Angeles County, California.

3.      Plaintiff is unaware of the true names and capacities of defendants sued as Does 1 through 10, inclusive, and therefore sue these defendants by these fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.  Each of the fictitiously named defendants is responsible in some manner for the occurrences alleged in this Complaint, and that Plaintiff's damages were proximately caused by those defendants.

4.      At all times material to this Complaint, each of the defendants in addition to acting for himself, herself or itself and on his, her or its own behalf individually, is and was acting as the agent, servant, employee and representative of, and with the knowledge, consent and permission of, each and all of the defendants and within the course, scope and authority of that agency, service, employment, and representation.  The acts of each of the defendants were fully ratified by each and all of the defendants.  The actions, failures to act, and breaches alleged and attributed to one or more of the specific defendants were approved, ratified, and done with the cooperation and knowledge of each and all of the defendants.

## JURISDICTION AND VENUE

5.      This Court has subject jurisdiction over Plaintiff's claims for copyright infringement and related claims pursuant to 17 U.S.C. §§ 101, et. seq.

6.      This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of the State of California pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiff's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

7.      The Court has personal jurisdiction over Defendant.  Defendant's corporate offices are in California.  Defendant solicits, transacts, and does business within the State of California and have committed unlawful and tortuous acts both within and outside the State of California causing injury in California.  Plaintiff's claims arise out of the conduct that gives rise to personal jurisdiction over Defendant.

8.      Venue is proper in this Court because, among other, Defendant maintains its corporate offices and conducts business in this district, and the alleged actions constituting violations of law occurred in this district.

9.      Plaintiff's rights and the copyright protection for Martial Universe Content (as defined below) are protected under the Berne Convention for the Protection of Literary and Artistic Works.

**FACTUAL BACKGROUND**

10.     Plaintiff and Defendant are not strangers. In 2018, Plaintiff contracted with Defendant for various content, under which Defendant paid Plaintiff a flat-rate license fee for each piece of content for a limited license to distribute and sell such content in certain emerging markets. For all previous content, Defendant paid Plaintiff a flat-rate, up-front license fee for such rights.

11.     Then, in 2019, Plaintiff engaged in preliminary discussions with a division of Defendant, Juice Worldwide, regarding Defendant delivering, distributing, and selling three different series on the iTunes platform under a distribution agreement with Plaintiff.  The three series were Martial Universe (Seasons 1 and 2), Legend of Hao Lan (Season 1) and I Will Never Let You Go

(Season 1) (collectively "Series Content").  Season 1 and season 2 of Martial Universe and all 60-episodes that make up season 1 and season 2 shall be referred to herein as "Martial Universe Content."

12.    Plaintiff was and is the exclusive licensee authorized to reproduce, distribute and sell all the Series Content in certain jurisdiction, including the United States, and hold the exclusive rights to all associated copyright rights for this purpose.

13.   While negotiating the distribution rights with Plaintiff, Defendant requested to review the Series Content to confirm that they were compatible with the iTunes platform.  The CEO of Defendant seemed unusually rushed to get the Series Content for review while negotiating the agreement.  However, given Plaintiff's prior dealings with Defendant, Plaintiff agreed to provide Series Content to Plaintiff for technical review.

14.    In June 2019, as part of these preliminary discussions, Plaintiff provided master copies of all the Series Content, including the Martial Universe Content to Defendant to perform a technical assessment of the Series Content.

15.    Plaintiff further provided Defendant with subtitles, certain metadata, and poster artwork for each season of the Series Content (i.e., three seasons total). The artwork delivered was six pieces of artwork in total, which comprised two alternative posters for each series. Plaintiff maintains that it never provided Defendant with any artwork for each episode within any Series Content.

16.    Of the three works comprising the Series Content, Defendant prioritized Legend of Hao Lan for technical review, and began working first on that series.

17.    On July 3, 2019, Defendant confirmed by email to Plaintiff that Defendant had delivered Legend of Hao Lan to iTunes and that Defendant would begin working on Martial Universe and I Will Never Let You Go in the coming week and would provide updates.  See **Exhibit A** attached hereto, which is a true

1   and correct copy of email correspondence between representative of Plaintiff and

2   Defendant.

3       18.     Thereafter, Plaintiff began receiving technical requests on July 9,

4   2019 concerning the I Will Never Let You Go series.

5       19.     Then, on July 15, 2019 Plaintiff received an email stating the

6   following:  "Season 1 of the Legend of Hao Lan has been delivered to iTunes, but

7   is not yet turned on/cleared for sale pending the execution of the deal. ***Once signed***

8   ***we can clear for sale and continue with further deliveries.***"  See **Exhibit B**

9   attached hereto, which a true and correct copy of email correspondence between

10  representative of Plaintiff and Defendant (emphasis added).

11      20.     Defendant sent one last email with a technical correction request on

12  July 16 for I Will Never Let You Go, but thereafter sent no further emails

13  regarding technical requests.

14      21.     Then, on July 31, 2019, Defendant sent an email to Plaintiff

15  reiterating, "We cannot put content live until we have an agreement executed – so

16  we're in a holding pattern." See **Exhibit B**.

17      22.     Shortly after July 31, 2019, negotiations failed.  Plaintiff sought for

18  Defendant to pay a license fee per episode as part of the negotiations for the

19  distribution agreement. Defendant declined to pay an upfront license fee, and

20  further indicated that it has no intent to actively market the content for sale on the

21  iTunes platform.  Defendant was attempting to close the business agreement on

22  terms different than previous dealings between the parties.  For these reasons,

23  negotiations between Plaintiff and Defendant ceased.  No agreement was ever

24  reached between Plaintiff and Defendant.

25      23.     Based upon the email exchanges noted above and telephone calls

26  pertaining to the same, Plaintiff and Defendant both clearly understood that no

27  content would be made live on iTunes until the parties had an executed agreement.

28

24. Based upon these same communications, Plaintiff understood that Legend of Hao Lan had been uploaded to iTunes but would not be made live until an agreement was executed. Plaintiff further understood, pursuant to the July 15, 2019, email, that no further deliveries besides Legend of Hao Lan would be made to iTunes until an agreement was executed. Accordingly, nothing further should have been delivered to iTunes besides Legend of Hao Lan and under no circumstances should anything have been made live on iTunes.

25. Plaintiff further understood that a technical review was underway from July 9-16, 2019, for I Will Never Let You Go but never received any indication or confirmation that the technical review for I Will Never Let You Go was completed prior to negotiations ceasing. Further, Plaintiff understood that the technical review for Martial Universe never took place.

26. In fact, during the month of July 2019, Plaintiff did not receive one technical email request concerning Martial Universe from Defendant, nor did Plaintiff receive any updates on the status of the Martial Universe Content. Based upon Defendant's representations that nothing further would be delivered and that nothing would be unlocked until the parties had an executed agreement, Plaintiff understood that Defendant ceased working on the Martial Universe Content and neither the Martial Universe Content nor the I Will Never Let You Go content were ever uploaded to iTunes.

27. At no time during the negotiations between Plaintiff and Defendant did Plaintiff grant Defendant any rights or license to the Series Content, and in fact, Plaintiff clearly understood that no content beyond Legend of Hao Lan would even be delivered to iTunes until an agreement was executed.

28. Then, on or about the end of August 2020, approximately a year subsequent to negotiations terminating between Plaintiff and Defendant, in connection with Plaintiff's own plans to distribute the Martial Universe Content on iTunes, Plaintiff discovered that, without its knowledge or approval, Defendant

1    was distributing and selling all 60-episodes of Martial Universe on the iTunes

2    platform, and had been doing so for at least 12 months, without authorization or

3    license from Plaintiff.

4         29.    Unbeknownst to Plaintiff and without Plaintiff's permission, during

5    negotiations for the commercial license agreement between the parties, Defendant

6    uploaded all 60-episodes of the Martial Universe series to the iTunes platform.

7         30.    Then, sometime thereafter, again without Plaintiff's permission, or

8    any rights or license in the Martial Universe Content, Defendant prepared the

9    Martial Universe Content for sale on iTunes.  Also without Plaintiff permission,

10   Defendants established sale prices for each season and each episode of the Martial

11   Universe Content on iTunes, uploading content images for the series and created

12   and uploaded each artwork for each episode.

13        31.    Plaintiff also provided false and inaccurate information regarding the

14   release date, copyright owner information and the first air date of each episode,

15   which dates presumably coincides with the date that Defendant unlocked the

16   Martial Universe Content for sale.  Defendant then unlocked the Martial Universe

17   Content for sale to consumers to purchase, stream and/or download, and said

18   content was sold and distributed to consumers for streaming and/or to download.

19        32.    The Martial Universe Content is a premium 60-episode series.

20   Martial Universe is a 2018 Chinese drama series directed by Zhang Li, based upon

21   the popular novel Wu Dong Qian Kun by Tian Can Tu Dou.

22        33.    During its premiere on Asia's largest TV network, Dragon TV, Martial

23   Universe consistently ranked in the Top 10, even peaking at number 3 for some

24   episodes. Martial Universe won the Chinese Television Drama Production Industry

25   Association Awards for Outstanding Television series in 2018, and features actors

26   and actresses that won and were nominated for awards for their performance in the

27   series, in both 2018 and 2019.  Martial Universe also won 'IP Adaptation of the

28   Year' in the Golden Bud - The Third Network Film and Television Festival.

34.     Given the success of Martial Universe, the Martial Universe 60-episode series is considered premium content and has been licensed by Plaintiff for distribution on various digital platforms as premium content.

35.     During the year in which Defendant unlawfully offered and sold the Martial Universe Content to the public on the iTunes platform, Defendant received sales reports and money from iTunes for the unauthorized distribution of at least certain parts of the Martial Universe Content and did nothing to remedy its unlawful activity until Plaintiff's discovered Defendant's unlawful activity and demanded that Plaintiff's remove the content.  Such sales reports establish that consumers purchased and downloaded or streamed the Martial Universe Content and that Defendant sold and distributed the Martial Universe Content on the iTunes platform. Such sales reports further establish that Defendant was well aware of the fact that it was unlawfully distributing the Martial Universe Content, and thus willfully infringed Plaintiff rights by knowing it was distributing and selling unlicensed Martial Universe Content to the public and doing nothing to remedy their infringement until they were caught.

### FIRST CAUSE OF ACTION

### Copyright Infringement - 17 U.S.C. § 501

36.     Plaintiff repeats and re-alleges each allegation set forth above as if set forth fully herein.

37.     Plaintiff was and is the exclusive licensee of the Martial Universe Content in certain jurisdictions, including the United States.  Plaintiff's rights and the copyright protection for the Series Content are protected under the Berne Convention for the Protection of Literary and Artistic Works.

38.     As the exclusive licensee, Plaintiff is authorized to reproduce and to authorize reproduction of the copyrighted work in copies, to distribute and to authorize distribution of copies of the copyrighted work to the public by sale or

other transfer of ownership, and to display and to authorize the displaying of copyrighted work publicly. *See* 17 U.S.C. § 106(1) & (3).

39.     Plaintiff has the exclusive rights "to prepare derivative works based upon the copyrighted work" and "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending," 17 U.S.C. § 106(2) & (3).

40.     As set forth above, in 2019, Plaintiff engaged in preliminary discussions with a division of Defendant, Juice Worldwide, regarding Defendant delivering, distributing, and selling Series Content on the iTunes platform pursuant to a distribution agreement with Plaintiff.

41.     While negotiating the contract terms, Defendant requested to review the Series Content to confirm that they were compatible with the iTunes platform. As part of these preliminary discussions, Plaintiff provided master copies of all the Series Content, including the Martial Universe Content to Defendant to perform a technical assessment of the Series Content.

42.     Negotiations between Plaintiff and Defendant regarding Defendant gaining distribution rights to the Series Content failed.  Accordingly, Plaintiff never granted Defendant any rights in the Series Content, including the right to upload the Marital Universe Content to iTunes, let alone sell or distribute the Martial Universe Content to the public.

43.     Nevertheless, Defendant unlawfully uploaded the Martial Universe Content to iTunes and sold and distributed copies of the Martial Universe Content to the public on iTunes from approximately July 26, 2019 to September of 2020.

44.     Further, Plaintiff maintains that while it provided Defendant with season level artwork, it never provided Defendant with episode level artwork for each of the 60 episodes of the Martial Universe Content.  See **Exhibit C**, which is a true and correct copy of the Juice Worldwide Google Drive file where Plaintiff uploaded the artwork, showing season level artwork only.

45.     Defendant unlawfully created all the episode level artwork from the Martial Universe Content and uploaded, displayed and distributed the episode level artwork on the iTunes platform in violation of Plaintiff's exclusive rights to create derivate works.

46.     At all times, Defendant exercised control over the Martial Universe Content, by uploading, transmitting and distributing the Martial Universe Content to the iTunes Platform and by instigating the copying, storage, distribution, streaming and/or downloading of the Martial Universe Content through its sale to the public on the iTunes platform.

47.     During the year in which Defendant unlawfully uploaded, sold and distributed the Martial Universe Content to the public on the iTunes platform, Defendant received sales reports and money from iTunes for the unauthorized sale, downloading and/or streaming of content to the public and did nothing to remedy its unlawful activity until Plaintiff's discovered Defendant's unlawful activity and demanded that Defendant's remove the content in August 2020.

48.     Such sales reports establish that consumers purchased, downloaded and/or streamed the Martial Universe Content and that Defendant uploaded, sold and distributed the Martial Universe Content to the public.

49.     Such sales reports further establish that Defendant was aware of its unlawful activity and willfully infringed Plaintiff rights by knowingly selling and distributing unlicensed Martial Universe Content and doing nothing to remedy its infringement until caught.

50.     Plaintiff alleges that Defendant: (i) unlawfully created derivate works from the Martial Universe Content by creating episode series artwork from the Martial Universe Content; (ii) unlawfully reproduced and uploaded unauthorized copies of the Martial Universe Content to iTunes, as well as unlawfully reproduced, uploaded and displayed the episode series artwork it unlawfully created to iTunes; and (iii) unlawfully distributed copies of the copyrighted work

1   when it sold copies of at least certain of the content to the public, and causing users

2   to download or stream the content after purchase.

3       51.    Plaintiff's distribution rights were violated once Defendant sold the

4   Martial Universe Content. Here, Defendant received money for the sale of at least

5   certain parts of the Martial Universe content on iTunes, so there is no dispute that

6   Defendant distributed at least certain of the Martial Universe Content and did not

7   just "make it available."

8       52.    As a result of its wrongful conduct, Defendant is liable to Plaintiff for

9   copyright infringement pursuant to 17 U.S.C. § 501.  Further, Defendant knew its

10  acts constituted copyright infringement. Defendant's conduct was willful within

11  the meaning of the Copyright Act.

12      53.    Plaintiff is entitled to recover damages, which includes its losses and

13  any and all profits Defendant made as a result of its wrongful conduct.  17 U.S.C. §

14  504.  Such damages include reasonable fair market licensing fees for the

15  copyrighted work, as well as other damages afforded by the law.

16      54.    Accordingly, Plaintiff is not only entitled to Defendant's profits on its

17  sale of the Martial Universe Content, but is also entitled to Plaintiff's lost licensing

18  fees.  Lost licensing fees can be easily established by other fee structures for the

19  Martial Universe Content, which Plaintiff can establish based upon fees charged by

20  Plaintiff for distribution of Martial Universe on other platforms, including

21  platforms much smaller than iTunes.

22      55.    Additionally, Plaintiff's practice of charging fees not based upon sales

23  performance, such as flat, upfront, lump sum fees for content, is well established

24  and cannot be said to be speculative, especially considering that Defendant

25  previous paid Plaintiff the year prior (in 2018) flat, upfront fees to distribute

26  various content, and other agreements Plaintiff has in place for the license of

27  Martial Universe Content.

28  //

## SECOND CAUSE OF ACTION

### Fraud

56.     Plaintiff repeats and re-alleges each allegation set forth above in Paragraphs 1-35 as if set forth fully herein.

57.     Plaintiff alleges that Defendant is liable to Plaintiff for fraud.  The elements of fraud, which give rise to the tort action for fraud and deceit, are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.

58.     Plaintiff alleges that Defendant made several false representations to Plaintiff.  First, on or about June of 2019, Plaintiff provided Defendant with the Series Content, including but not limited to the Martial Universe Content masters, in reliance on Defendant's representations to Plaintiff that it was going to use the Series Content only for due diligence and technical assessment while the parties negotiated a contract to allow Defendant to make the Series Content available on iTunes for sale to U.S. customers.

59.     Given Plaintiff's prior dealings with Defendant, Plaintiff was justified in believing and relying on Defendant and its representations, despite Defendant being hurried to receive the Series Content. Plaintiff trusted that Defendant was going to use the Series Content only for purposes of performing a technical assessment during contract negotiations.

60.     Despite being told that only a technical review was occurring, Defendant delivered one series in the Series Content, Legend of Hao Lan, to iTunes on or around the first week of July 2019; however, Defendant shortly thereafter told Plaintiff, in writing, on July 15, 2019, that the Legend of Hao Lan content would not be cleared for sale and that ***further content deliveries would not be made until a contract was signed***.  See **Exhibit B** (emphasis added).

//

61.   Based upon this July 15, 2019, representation, Plaintiff understood that no further content would be delivered to iTunes (*i.e.*, I Will Never Let You Go and Martial Universe would not be delivered to iTunes) and that Legend of Hao Lan would not be unlocked for sale on iTunes until the parties executed an agreement.

62.   Then again on July 31, 2019, Defendant told Plaintiff, in writing, that they "cannot put content live until we have an agreement executed – so we're in a holding pattern."  See **Exhibit B**.

63.   When the negotiations failed on or shortly after July 31, 2019, Plaintiff had no reason to believe that Defendant's representations - that it would not deliver further content to iTunes (i.e., Martial Universe and I Will Never Let You Go) and would not unlock any content for sale - were false. Again, given the prior dealing with Defendant, Plaintiff relied on Defendant's representations and was justified in its reliance.

64.   Then, just over a year later, in August 2020, when Plaintiff was attempting to launch Martial Universe on iTunes itself, Plaintiff discovered that Defendant not only uploaded the content to iTunes, but also unlocked the content for sale to the public.  Plaintiff saw no evidence at that time that Legend of Hao Lan was ever unlocked for sale, or any evidence that I Will Never Let You Go was made available on iTunes or unlocked for sale.

65.   What Plaintiff uncovered was that despite Defendant making representations to Plaintiff on July 15, 2019, and then again on July 31, 2019, that no further content would be delivered (besides the Legend of Hao Lan) and that no content would be unlocked for sale, Defendant not only made the Martial Universe Content available on iTunes, but also made the content available for sale on iTunes during the same time Defendant was making these representations.

66.   On the attached **Exhibit D**, which are true and correct copies of screen shots from the iTunes stores, it appears that Defendant first made the

content available on July 26, 2019, which is the listed first air date of all the first and second season episodes of Martial Universe Content on the iTunes platform.

67.     While the real first air dates were provided to Defendant for each episode of Martial Universe, Defendant instead used the date that it made the content available for sale on iTunes as the first air date for all episodes of the Martial Universe Content.

68.     Based upon the foregoing, it is clear that Defendant made its statements to Plaintiff knowing that the statements were false. At the same time Defendant was representing to Plaintiff that it could not deliver further content or unlock content for sale without a signed contract, Defendant was continuing to upload Martial Universe Content to iTunes and was unlocking the Martial Universe Content for sale just days before it represented to Plaintiff it would not do so without an executed agreement.

69.     Defendant undoubtedly knew that what it was doing was not lawful, as Plaintiff had not even provided Defendant with all the information necessary to make the Martial Universe Content available on iTunes. As such, Defendant had to manufacture additional content.

70.     In particular, as previously stated, Plaintiff only provided Defendant with copies of original masters, certain content-level metadata, and season level posters, i.e., the main poster for each season. No episodic screenshots were provided to Defendant.  To make the content available online, Defendant had to create the episodic screenshots of Martial Universe as seen on **Exhibit C**.

71.     What took the fraud to an entirely different level and beyond that of just the unauthorized use of the Martial Universe Content was that Plaintiff and Defendant never discussed pricing for the seasons or the series of the Martial Universe Content.  Defendant made up and set its own prices for all of the 60-episodes of Martial Universe on the iTunes platform, as well as Season 1 and Season 2.

72.    The prices Defendant made up were drastically reduced non-premium rates that failed to price differentiate between high definition and standard definition content.  Pricing the Martial Universe Content as such made Plaintiff believe that Defendant never intended to market or sell the content. Rather, as explained below, Defendant used the Martial Universe Content for its own purposes to help maintain its iTunes preferred status by making premium content available on iTunes.

73.    The Martial Universe Content is premium content.  Defendant clearly saw an opportunity to gain control over said premium content when Plaintiff approached Defendant about the Series Content. Defendant sought immediate review of the content for technical compliance and pushed Plaintiff for early technical evaluation so that it could be launched as soon as a contract was finalized.  Yet, Defendant knew, based upon prior dealings with Plaintiff, that Plaintiff would require an up-front, lump sum payment for each episode of content, and knew that if it refused to pay an up-front lump sum, as it did, the contract with Plaintiff would never be solidified.

74.    Defendant further knew that Plaintiff is located in Mauritius and could not easily police U.S. activity on the iTunes platform. Despite telling Plaintiff that nothing further would be done with the Series Content until a contract was executed, Defendant was not only making the Martial Universe Content available on iTunes and unlocking it for sale with Defendant's created episodic screen shots, Defendant was offering the Martial Universe Content for sale at pricing harmful to the Martial Universe Content and to Plaintiff's reputation.

75.    Defendant further disregarded the value of the Martial Universe Content not only through its bargain basement pricing, but by misrepresenting the copyright owner of the Martial Universe Content, the release date, and the first air date – all with total disregard for the quality of the content and the permanent harm that this would cause the Martial Universe Content and Plaintiff's reputation on the

iTunes platform and in its negotiations with others regarding the Martial Universe Content and other content.

76.    Further evidence supporting fraud is the fact that the Martial Universe Content, to Plaintiff's knowledge, was not touched in July 2019 for technical assessment and was the only content that Plaintiff found on iTunes.  Of the three series, this would have been the last Plaintiff would have expected to see on iTunes since it was the last of the Series Content being reviewed and to which Plaintiff believed was never reviewed.

77.    As evidenced by Defendant's communications with Plaintiff in **Exhibits A** and **B**, Legend of Hao Lan had already been uploaded to iTunes, and I Will Never Let You Go was undergoing technical assessment after Legend of Hao Lan.  Yet, to Plaintiff's knowledge, only the premium content of Martial Universe (the largest of the premium content provided in the Series Content) was made available and unlocked on the iTunes platform and then left on the iTunes platform for over a year, until Plaintiff discovered the content on iTunes and sought for Defendant to take the content down.

78.    Defendant's desire to make 60 episodes of the premium content available on iTunes simply for purposes of making it available, is because Defendant is an iTunes aggregator, that through its Juice Worldwide division, enjoys a "Preferred Plus" provider status.

79.    As a Preferred Plus provider, Defendant needs to deliver a certain amount of hours of content without problems to retain its status. Defendant also receives an aggregator score when it delivers quality content. Through unlawfully making the Martial Universe Content available on the iTunes platform, Defendant benefited by receiving over 50 hours of high-quality content, that needed no re-delivery or changes to the master files.

80.    Defendant fraudulently, for Defendant's own benefit, to assist Defendant with its rating and status position, made the Martial Universe premium

content for sale on iTunes and left it there for over a year.  This also benefited Defendant in its compliance requirements for maintaining its Preferred Plus provider status and by increasing its Preferred Plus ratings.

81.    Defendant never intended to enter into an agreement with Plaintiffs for the Series Content, never intended to stop delivery of content to iTunes until a contract was signed, and certainly never intended to keep content locked until a contract was signed.

82.    Defendant's fraudulent acts caused enormous harm to Plaintiff, directly damaging the competitive and commercial nature of the Martial Universe Content and Plaintiff's ability to market and sell the Martial Universe Content, as well as other content, and harming its ability to sell the Martial Universe Content and other content on iTunes.

83.    In particular, the pricing Defendant set for Martial Universe was below any other content on iTunes, whether library or recent content, evidencing that Defendant had no intent of doing anything with the content other than gaining status and rating from uploading 60-episodes of premium master content.  In fact, the rates at which Defendant priced Season 1 of Martial Universe Content on iTunes are lower than less popular series first released over a decade ago and clearly below iTunes average sale prices.

84.    For the Martial Universe Content, Defendant set the pricing structure for a sale price of $18.99 a season, and priced each episode at under a dollar an episode, and at under 50 cents an episode for season 1.  Further, Defendant failed to charge a different price for HD verse SD content. Even years later after its release date, Season 1 is currently priced at $100.99 for HD content, and each episode is at $1.99, on Amazon prime video, which has a smaller base of subscribers than iTunes.

85.    Further harming Plaintiff was that Defendant did nothing to advertise or promote the sale of the Martial Universe Content on iTunes, during the time

Martial Universe was on iTunes.  Defendant knew marketing the content on iTunes was vital to Plaintiff as it was one of the reasons the agreement between the parties was never finalized.

86.     iTunes is widely regarded to be the number 1 platform in terms of video quality, audio quality (loss-less Audio: AAC) and is geared to an audience using more premium devices, i.e. Apple products. iTunes is the platform of choice for even major studios having their own streaming platforms to use for their premieres.  Defendant's pricing of the Martial Universe Content series and episodes does not justify either the caliber of the series or the fact that content was offered on the iTunes platform.  Defendant caused enormous harm to Plaintiff not only in its bargain basement pricing and failing to market and advertise the series.

87.     Most damaging to Plaintiff is that Defendant's ill pricing and lack of marketing permanently erased Plaintiff's opportunity to have the Martial Universe Content series and episodes ranked in the highly sought-after iTunes pre-order charts.

88.     While Defendant benefited from Defendant receiving increased rating and compliance necessary to retain its status, Defendant allowed Martial Universe Content to sit on the iTunes platform for over a year, with full knowledge that it was on the iTunes platform, with no visibility, marketing or promotion, offering the content for sale at extremely depressed and undervalued rates, all causing Martial Universe to generate low ratings and all while attributing ownership of the content to Plaintiff.

89.     Defendant not only denied Plaintiff of the opportunity to successfully launch the Martial Universe series and sell it at premium prices, but damaged Plaintiff's ability to subsequently and successfully release the Martial Universe series on iTunes, and promote its other titles on the iTunes platform, causing further irreparable harm to Plaintiff's brand and reputation.

//

90.     Further, the low ratings caused by Defendant's unauthorized and unlawful uploading and sale of all episodes of Martial Universe at non-premium content rates, without any marketing or promotional activities, has rendered the content ineligible for placement on the iTunes pre-orders charts, which is highly sought after to generate buzz and demand for future titles on the platform, further damaging Plaintiff.

91.     As described in detail above and incorporated herein, Defendant intentionally and consciously misrepresented and omitted material facts in utter disregard of the truth with the specific purpose and intent of making the Martial Universe Content available on iTunes without Plaintiff's knowledge, and with total disregard for its success.

92.     Plaintiff reasonably, justifiably, and detrimentally relied on Defendant's misrepresentations and fraudulent omissions.  The act alone of making the Martial Universe Content available on iTunes with such bargain basement pricing, and false metadata, solely for Defendant's own gain, without any disregard for the harm it would cause Plaintiff, constituted fraud.

93.     As a direct and proximate cause and result of Defendant's misrepresentations and fraudulent acts, Plaintiff has been damaged in an amount according to proof and in excess of the jurisdictional minimum of this Court.

94.     Moreover, Defendant's fraudulent actions, conscious and reckless disregard of the consequences of its actions, and its intent to injure Plaintiff were willful, wanton, malicious or oppressive so as to warrant punitive damages against it to punish or deter it from similar future conduct.

## THIRD CAUSE OF ACTION

## Violation of California Business and Professions Code § 17200, et. seq.

95.     Plaintiff repeats and re-alleges each allegation Paragraphs 1-35 set forth above as if set forth fully herein.

96.     Plaintiff alleges that Defendant is liable to Plaintiff under California Business and Professions Code § 17200, et seq., (the "Unfair Competition Law" or "UCL"), which prohibits, among other things, unlawful, unfair, deceptive and fraudulent business practices. Here, Plaintiff alleges Defendant engaged in unlawful, unfair, deceptive and fraudulent business practices.

97.   As outlined in great detail with respect to Plaintiff's second cause of action for fraud, which allegations in Paragraphs 57-94 Plaintiff repeats and re-alleges herein, Plaintiff engaged in negotiations with Defendant for distribution rights in the Series Content. In connection with the negotiations, Defendant made several misrepresentations to Plaintiff which deceived Plaintiff into believing that Defendant would not use the digital content, *i.e.*, the Series Content, it provided to Defendant for any purpose other than to conduct a technical review until a contract between Plaintiff and Defendant was signed.

98.     Contract negotiations failed and Plaintiff and Defendant never entered into an agreement granting Defendant any rights in the Series Content, including the Martial Universe Content.  Nevertheless, a year later, Plaintiff discovered that not only had Defendant uploaded and distributed the Martial Universe Series Content on iTunes, but also that Defendant did so in a manner that was deceitful and harmful, causing damage to the good will and reputation of not only the Martial Universe Content, but also harmed Plaintiff's ability to effectively release the Martial Universe Content in iTunes again, or other content of Plaintiff.

99.     Again, on or about June of 2019, Plaintiff provided Defendant with the Series Content, including but not limited to the Martial Universe Content masters, only for Defendant to perform due diligence and a technical assessment while the parties negotiated a contract to allow Defendant to distribute the Series Content on iTunes for sale to U.S. customers. Plaintiff had prior dealings with Defendant and had no reason to not trust Plaintiff that the Series Content was only

being suppled for purposes of performing a technical assessment during contract negotiations.

100.   During the technical assessment, the following events occurred and the following representations were made:

(a) Defendant delivered one series in the Series Content, Legend of Hao Lan, to iTunes on or around the first week of July 2019.  *See* **Exhibit A**.

(b) Defendant then wrote Plaintiff, on July 15, 2019, stating that the Legend of Hao Lan content would not be cleared for sale and that further content deliveries would not be made to iTunes until a contract was signed.  *See* **Exhibit B**; and

(c) on July 31, 2019, Defendant told Plaintiff, in writing, that they "cannot put content live until we have an agreement executed – so we're in a holding pattern."  *See* **Exhibit B**.

101.   Based upon these representations, Plaintiff understood that no further content would be delivered to iTunes (*i.e.*, I Will Never Let You Go and Martial Universe) besides Legend of Hao Lan and that Legend of Hao Lan would not be unlocked for sale on iTunes until the parties executed an agreement.

102.   Accordingly, when the negotiations failed shortly after July 31, 2019, Plaintiff had no reason to believe that Defendant would continue to use any Series Content for any other purposes and would remove Legend of Hao Lan from iTunes.  Again, given the prior dealing with Defendant, Plaintiff relied on the representations and was justified in its reliance.

103.   Then, in August 2020, when Plaintiff was attempting to launch Martial Universe on iTunes itself, Plaintiff discovered that Defendant's not only made the Martial Universe Content available on iTunes, but also unlocked the Martial Universe Content for sale to the public. Again, Plaintiff saw no evidence at that time that Legend of Hao Lan was ever unlocked for sale, or any evidence that I Will Never Let You Go was made available on iTunes or unlocked for sale.

104.   Plaintiff then discovered that Defendant not only uploaded and made the Martial Universe Content available on iTunes for sale, but Defendant did so during the same July 2019 time frame that Defendant was making representations to Plaintiff that it would not do so.

105.   As evidenced in **Exhibit D**, the first air date of all the Martial Universe Content is listed as July 26, 2019, which would indicate that the Martial Universe Content was first uploaded and offered for sale on iTunes by Defendant on that date.  Defendant clearly knew that the statements being made to Plaintiff on July 15, 2019 and July 31, 2019 were false, and that they were using the Martial Universe Content for purposes other than making a technical assessment of the Martial Universe Content.

106.   To further support that Defendant knowingly engaged in unfair business practices, Defendant had to manufacture additional content to make the Martial Universe Content available for sale and distribution on iTunes, and falsely represented content which was previously provided to them – like release date, first air date, and incorrectly listed Plaintiff as the copyright holder.

107.   For example, Plaintiff only provided Defendant with the main poster for each season of the Martial Universe Content. No episodic screenshots were provided to Defendant.  Further, Plaintiff and Defendant never discussed pricing information for the individual Martial Universe episodes or seasons.

108.   To make the content available online, Defendant had to create the episodic screenshots seen on **Exhibit C** and had to further set prices for all of the 60-episodes of Martial Universe on the iTunes platform, as well as Season 1 and Season 2.  Using the Martial Universe Content and setting prices for the Martial Universe Content is clearly an unfair practice when Defendant had no rights to use the content for any purpose other than technical assessment.

109.   Defendant then set prices at drastically reduced non-premium rates and failed to price differentiate between high definition and standard definition

content, as if it never intended to market or sell the content. Rather, as explained above, it is believed that Defendant unlawfully used its access to the Martial Universe Content solely to help maintain its iTunes preferred status by making premium content available on iTunes, and in doing so harmed the Martial Universe Content and Plaintiff's reputation.

110.   Again, Martial Universe is premium content.  Defendant gained control over premium content when Defendant sought immediate review of the content for technical compliance, and clearly took unfair advantage of having the premium content in its possession.

111.   Plaintiff is located in Mauritius. Defendant knew that Plaintiff could not easily police U.S. activity on iTunes and again, took advantage of that fact.

112.   In direct contradiction to Defendant's written statements to Plaintiff, Defendant commenced uploading and unlocking the Martial Universe Content before the parties could even reach an agreement on business terms. Defendant further created episodic screen shots and provided pricing for all the Martial Universe Content for release.

113. All the evidence supports that Defendant acquired the Martial Universe Content from Plaintiff relying upon the trust established by the parties' prior business dealings, and then knowingly made the Martial Universe Content available for sale on iTunes while falsely representing to Plaintiff that it could not deliver further content or unlock any content for sale on iTunes until a contract was signed.  Simultaneously, Defendant was refusing to accept the standard deal terms of Plaintiff and refusing to market the Series Content, causing negotiations to cease.

114.   Further evidence supporting unfair, deceptive and fraudulent acts is the fact that the Martial Universe Content, to Plaintiff's knowledge, was not touched in July 2019 for technical assessment, yet was the only content that Plaintiff found being made available for sale by Defendant on iTunes.

115.   As evidenced by Defendant's communications with Plaintiff in **Exhibits A** and **Exhibit B**, Legend of Hao Lan had already been uploaded to iTunes, and I Will Never Let You Go was undergoing technical assessment after Legend of Hao Lan.  Yet, to Plaintiff's knowledge, only the 60-episode premium content of Martial Universe Content (which was the largest series in the Series Content) was made available and unlocked on the iTunes platform and was then left on the iTunes platform for over a year, until Plaintiff discovered the content on iTunes and sought for Defendant to take the content down.

116.   As a Preferred Plus provider, Defendant needs to deliver a certain amount of hours of content without problems to retain its status. Defendant also receives an aggregator score when it delivers quality content. Through unlawfully making the Martial Universe Content available on the iTunes platform, Defendant benefited by receiving over 50 hours of high-quality content that needed no re-delivery or changes to the master files, which also benefited Defendant's Preferred Plus compliance requirements.

117.   Defendant unlawfully, deceitfully, and fraudulently, for Defendant's own benefit, to assist Defendant with its rating and status position, made the Martial Universe premium content for sale on iTunes and left it there for over a year.

118.   Defendant's fraudulent acts and unfair business practices has caused enormous harm to Plaintiff, directly damaging the competitive and commercial nature of the Martial Universe Content and Plaintiffs ability to market and sell the content.

119.   In particular, the pricing Defendant set for Martial Universe is below any other content on iTunes. Defendant set the sales prices on iTunes for each season and each episode at bargain rates, without any value for the premium nature of the content.  Defendant set the pricing structure for a sale price of $18.99 a season and priced each episode at under a dollar an episode, and at under 50 cents

an episode for season 1, and failed charge a different price for HD verse SD content. Even years later after its release date, Season 1 is currently priced at $100.99 for HD content, and each episode is at $1.99, on Amazon prime video, which has a smaller base of subscribers than iTunes.

120. Further harming Plaintiff, Defendant did nothing to advertise or promote the sale of the Martial Universe Content on iTunes.

121. iTunes is the platform of choice for even major studios having their own streaming platforms to use for their premieres. Defendant's pricing of the Martial Universe Content does not justify either the caliber of the series or the fact that content was offered on the iTunes platform.

122. Defendant caused enormous harm to Plaintiff not only in its bargain basement pricing and failing to market and advertise the series, but its actions also permanently erased Plaintiff opportunity to have the series and episodes ranking in the highly sought-after iTunes pre-order charts.

123. While Defendant benefited from receiving increased rating and compliance necessary to retain its status, Defendant allowed Martial Universe to sit on the iTunes platform for over a year, with full knowledge that it was on the iTunes platform, with no visibility, marketing or promotion, and offering content for sales at extremely depressed and undervalued rates, all causing Martial Universe to generate low ratings and all while attributing ownership of the content to Plaintiff.

124. Defendant not only denied Plaintiff of the opportunity to successfully launch the Martial Universe series and sell it at premium prices, but damaged Plaintiff's ability to subsequently and successfully release the Martial Universe series on iTunes, and promote its other titles on the iTunes platform, causing further irreparable harm to Plaintiff's brand and reputation.

125. Further, the low ratings caused by Defendant's unauthorized and unlawful sale of all episodes of Martial Universe at non-premium content rates,

without any marketing or promotional activities, has rendered the content ineligible for placement on the iTunes pre-orders charts, which is highly sought after to generate buzz and demand for future titles on the platform, further damaging Plaintiff.

126.   As described in detail above and incorporated herein, Defendant intentionally and consciously misrepresented and omitted material facts in utter disregard of the truth with the specific purpose and intent of making the Martial Universe Content available on iTunes without Plaintiff's knowledge.

127.   Defendant's acts were unlawful, unfair, deceptive and fraudulent business practices, which caused injury to the value of the Martial Universe Content and the Plaintiff separate from any loss income that Plaintiff would have realized from a distribution agreement with Defendant. Accordingly, Plaintiff has standing to pursue these claims as it has suffered injury in fact and has lost money or property as a direct, proximate, and substantial cause and result of Defendant's violations of the UCL.

128.   Plaintiff reasonably, justifiably, and detrimentally relied on Defendant's misrepresentations and fraudulent omissions. Again, as with the fraud claim, the act alone of making the Martial Universe Content available on iTunes with such bargain basement pricing, and false metadata, solely for Defendant's own gain, without any disregard for the harm it would cause Plaintiff, constituted unfair competition.

129.   Defendant's fraudulent actions, conscious and reckless disregard of the consequences of its actions, and its intent to injure Plaintiff were willful, wanton, malicious or oppressive so as to warrant punitive damages against it to punish or deter it from similar future conduct.

130.   Plaintiff seeks damages in an amount of which will be proven at trial and in excess of the jurisdictional minimum of this Court. Plaintiff is entitled to

recover costs and attorney's fees according to proof at trial, as well as actual and punitive damages and other damages allowed by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant as follows:

1. Plaintiff be awarded its actual damages, in an amount to be proven at trial;

2. Plaintiff be awarded its incidental and consequential damages in an amount to be proven at trial;

3. Plaintiff be awarded punitive damages in an amount to be proven at trial;

4. Plaintiff be awarded its attorney's fees and costs; and

6. Plaintiff be granted such other relief as this Court may deem just and proper.

Dated: August 5, 2022    **AVYNO LAW P.C.**

        By: <u>/s/ Jennifer Hamilton</u>
          Jennifer Hamilton

          Attorneys for Plaintiff
          LIVN Worldwide Ltd.

1

**DEMAND FOR JURY TRIAL**

2

Plaintiff requests a jury trial on all issues properly triable to a jury.

3

4

Dated:  August 5, 2022                    **AVYNO LAW P.C.**

5

6

By:  /s/ Jennifer Hamilton

7

Jennifer Hamilton

8

Attorneys for Plaintiff
LIVN Worldwide Ltd.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I hereby certify that on August 5, 2022, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

Dated:  August 5, 2022                    /s/Rebecca Meegan

SECOND AMENDED COMPLAINT