JOHN VAN LOBEN SELS (SBN 201354)
jvanlobelsels@thoits.com
THOITS LAW
400 Main Street, Suite 250
Los Altos, CA 94022
Telephone:   (650) 327-4200
Facsimile:   (650) 325-5572

Attorneys for Plaintiff LIVN Worldwide Ltd.

ELEANOR M. LACKMAN (SBN 298594)
   eml@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067
Telephone:   (310) 312-2000
Facsimile:   (310) 312-3100

Attorneys for Defendant Vubiquity Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LIVN Worldwide Ltd., a Mauritius limited company, <br><br>    Plaintiff, <br><br>    v. <br><br>Vubiquity Inc., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br>    Defendant. | CASE NO. 2:21-cv-09589-AB-KS <br><br>Honorable Karen L. Stevenson <br><br>**JOINT DISCOVERY STATUS REPORT** <br><br>Date:   November 27, 2023 <br>Time:   4:00 p.m. |

# JOINT DISCOVERY STATUS REPORT

Plaintiff LIVN Worldwide Ltd. ("Plaintiff") and Defendant Vubiquity, Inc. ("Defendant") submits the following Joint Discovery Status Report as required by the Court's November 17, 2023 Order (ECF 80).

## I.   Tentatively Resolved Issues

### 1. Defendant's Request for a Privilege Log

**Plaintiff's Position:** Plaintiff provided an initial privilege log on November 24, 2023. Due to changes in Counsel, Plaintiff is searching for additional communications with prior counsel for inclusion, as well as additional documents related to materials already logged (such as the date of a logged memorandum). Plaintiff will provide supplemental logs on a rolling basis as needed.

**Defendant's Position:** Defendant has agreed that communications relating to the case that were created subsequent to the December 10, 2021 filing date need not be logged. Because a first privilege log was received just this afternoon, despite Defendant's production of a log several weeks ago, Defendant is unable to evaluate whether follow up might be needed. However, Defendant has provided some additional follow up questions, with the hope that those will be resolved promptly.

### 2. Defendant's Request for Documents Related to *LIVN Worldwide, Ltd. v. Olympusat Holdings, Inc.*, C.D. Cal., Case No. 2:23-cv-06326-PA-AGR

**Plaintiff's Position:** Plaintiff has issued a supplemental production of documents responsive to these requests. Plaintiff continues to search for additional documents in the event that any were inadvertently missed and will provide another supplemental production to the extent any additional documents are identified.

**Defendant's Position:** Defendant is unable to evaluate whether follow up might be needed as to the adequacy of any production related to this request. Plaintiff has not yet made a full supplemental production.

### 3. Plaintiff's Request for Supplemental Discovery Requests

**Plaintiff's Position:** Defendant has agreed to make a supplemental production as well as provide supplemental written responses clarifying their positions on these issues. As of this submission, Defendant has provided this additional production. Plaintiff continues to review to confirm compliance.  Plaintiff has yet to receive the promised supplemental interrogatory responses.  On November 22, 2023, Defendant, for the first time, raised concerns that Plaintiff has not provided verifications with its interrogatory responses.  Plaintiff has agreed to do so to the extent they are missing.

**Defendant's Position:** Defendant has produced the documents requested to date and provided the supplemental answers to three identified interrogatories, reflecting the scope discussed during the parties' meet-and-confer, today. A verification will come shortly thereafter. Plaintiff's interrogatories have never been verified as required by F.R.C.P. 33, but Plaintiff represents that a verification will be provided shortly.

## II.   Disputed Issues

### 1. Plaintiff's November 8, 2023 Discovery Requests

**Plaintiff's Position:**

On November 8, 2023, Plaintiff serve a second set of Requests for

Admission and Requests for Production of Documents to Defendant. However, Defendant has refused to provide responses contending that Plaintiff's prior counsel waived Plaintiff's right to seek additional discovery. Defendant has not provided evidence of such an agreement. Defendant has, at most, provided emails from prior counsel implying that they did not *intend* to serve any additional discovery. But they have been unable to provide any definitive statements or proof of an agreement. As fact discovery in this action closes on December 8, Plaintiff's discovery requests dated November 8 were timely. *See* Fed. R. Civ. P. 34(b)(2)(A), 36(a)(3).

During meet and confer efforts on November 22, Defendant argued for the first time that the "agreement" is evidenced by the fact that the parties agreed to take depositions after completion of the prior rounds of discovery. Plaintiff does not understand the relevance of this argument. The law does not require that discovery take place in any "sequence." Rather, the rules are clear that "[u]nless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice, methods of discovery may be used in any sequence" Fed. R. Civ. P. 26(d)(3)(A). While many parties may *prefer* to complete written discovery before depositions are taken, that is a strategic decision and not a requirement under the law. *C.R. Laurence Co, Inc. v. Frameless Hardware*, 2022 WL 2035955, at *3 (C.D. Cal. Jan. 13, 2022) ("It may be true that, to some extent, Plaintiff would have to 'shoot in the dark' by proceeding with depositions before the pleadings are settled or before written discovery is complete. However, the timing of a deposition is a strategic decision for a litigant.")

**Defendant's Position:**

Plaintiff's position is incorrect, because the parties have so stipulated. Some history may be helpful here.

This case has been pending for nearly two years and has been pared back to one cause of action: for direct copyright infringement of an unregistered work. The issues, accordingly, are simple. First, did Vubiquity act with volitional conduct when the content that was the subject of the parties' negotiations and processing "went live" on iTunes? Second, if so, what is the proper measure of damages under 17 U.S.C. § 504(b)? The statute limits recovery to demonstrated damages (typically, a reasonable licensing fee) and Defendant's profits, if any, calculated by the revenues earned (here, $106) minus the costs (which exceeded $106), to the extent not duplicative.

The parties proposed dates – including a discovery cutoff date – in December 2022. The discovery process proved very slow, and the parties agreed to focus on productions and clean-up. In early June 2023, with certain documents being held up due to an impasse on the protective order, the parties discussed how to finish fact discovery and timing to allow for depositions and potential mediation. The parties met and conferred on June 13, 2023.  Defendant agreed to Plaintiff's requested extension of time to respond to discovery on the condition and understanding that there would be no new written requests except for clean-up requests that Plaintiff agreed could be served by Defendant in early July.  It seemed that Plaintiff's counsel was starting to appreciate that the cost of the litigation was well exceeding the potential upside and there was a need to get to the end. Defendant memorialized their discussions in an email, asking for objections or corrections to what Defendant had written. Plaintiff's then-counsel was responsive and added some clarifications but never expressed any issue with the parties' agreement. The parties further conferred on June 29, 2023 and confirmed the dates that they thought would work to both finish fact discovery and complete a mediation. Accordingly, the parties agreed to extend fact discovery close to August 21, 2023, coterminous with the deadline to hold a mediation. (ECF 54.)

It was not until two weeks later that Defendant learned that Plaintiff and counsel had disagreements and that counsel was intending to withdraw. Defendant noted the parties' prior agreement and the concern about prejudice if new counsel was planning to essentially start discovery all over again when everyone understood that the parties were near the end. As stated in Plaintiff's filing (ECF 56 at 4): "Prior to the entry of the most recent adjusted scheduling order, the parties had agreed to certain terms, including that no additional written discovery requests would be served following defendant's forthcoming service of requests (which were served on July 11, 2023), the parties would come to an agreement on a protective order to allow for the full exchange of documents; the parties would propose mediators from the District's Mediation Panel to try to ensure time for mediation prior to the completion of fact discovery; and that the dates set forth in the schedule proposed to the Court on June 30, 2023 (ECF No. 54) would be sufficient to permit the completion of the production of documents, the service of responses to written discovery, and the taking of depositions." This agreement was further raised with new counsel, who agreed that all dates agreed in the second schedule would be essentially extended by the same period of time across the board, consistent with the agreement by prior counsel.

As a courtesy, on the day that the new requests (due for response on the last day of fact discovery) were served, Defendant's counsel reminded Plaintiff's counsel that the negotiated time period that remained had included an agreement that written discovery was over, and the remaining period was for mediation, depositions, and clean-up. After all, under the Local Rules, the time to raise discovery disputes was already closed on the date that Plaintiff's current counsel initially appeared. For the first time, on November 8, 2023, Plaintiff's counsel expressed that they were entitled to serve additional requests. Rather than waiting to remind Plaintiff of the agreement when responding on December 8, 2023, Defendant raised the matter promptly, believing that there had to be an internal

Mitchell
Silberberg &
Knupp LLP

miscommunication. In the parties' conference, Plaintiff has indicated that it is amenable to receiving responses on the last day of fact discovery and is aware that they will be received after depositions take place. (Deposition notices have been served by both sides and the parties are conferring on scheduling them for the next two weeks.) However, Defendant is concerned that several of the requests appear to be very broad, in a manner that suggests that Plaintiff has used the change of counsel to its advantage, namely, to undo an agreement of prior counsel as to which Plaintiff agreed to be bound. Subsequent to the parties' agreement, on July 27, Plaintiff's principal wrote to Judge Birotte ex parte and indicated that it and its counsel were not in disagreement. See ECF No. 59 at 3.

By its request, Plaintiff appears to be asking not only for relief from its and prior counsel's agreement, but for a response prior to the time period permitted under the Federal Rules. Accordingly, not only is Plaintiff seeking to renege on a prior agreement, but any requested relief is premature as well.

**2. Defendant's request for documents related to Amazon.com, Prime Video, and YouTube**

**Plaintiff's Position:** Plaintiff cannot produce what does not exist. *Lee v. Lee*, 2021 WL 430696, at *4 (C.D. Cal. Jan 27, 2021) ("the court cannot order a party to produce documents that do not exist.")

Plaintiff acknowledges that that existence of disputes with other parties' related to these materials is arguably relevant to this action. Based on the parties' meet and confer efforts, Plaintiff understands that Defendant does not seek the production of every single document related to those other disputes. Rather, Defendant's request for these materials related to (1) records relating to Plaintiff's discovery of the other infringing uses, (2) any demand letters (or similar communications) sent by Plaintiff related to those infringing uses, and (3) any documents, contracts, licensing, or other similar agreements associated with

Mitchell Silberberg & Knupp LLP

7
**JOINT DISCOVERY STATUS REPORT**

business between Plaintiff and those infringing parties.[1]

As of the date of this submission, Plaintiff *has* produced all materials in its possession, custody, or control which fall into the abovementioned categories.[2] Defendant repeatedly insists that there "must" be more. But as Plaintiff has represented to Defendant on multiple occasions, it has already produced all documents responsive to these requests in its possession, custody or control. It has *not* contacted Amazon or YouTube as of today regarding these infringements. Rather Plaintiff is currently awaiting discovery in, and resolution of, its dispute in this action and their case against Olympusat before pursuing action against those parties. Plaintiff will continue to search for records in the unlikely event that any documents were missed, but such a result is unlikely.

There is no basis for Defendant to move to compel documents based on their mere speculation that something else "must" exist. *Lee v. Lee*, 2021 WL 430696, at *4 (C.D. Cal. Jan. 27, 2021) ("A mere suspicion that additional documents must exist is an insufficient basis to grant a motion to compel.") Rather, Defendant must identify a "colorable basis for its belief that relevant, responsive documents exist and are being improperly withheld." *Id.*; *Carter v. Dawson*, 2010 WL 4483814, at *3 (E.D. Cal. Nov. 1, 2010) ("The Court will not compel Defendants to produce

---

[1] To the extent Defendant contends that it is entitled to *all* documents associated with those disputes, Plaintiff believes that such requests would be improper and disproportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); *Dao v. Liberty Life Assurance Co. of Boston*, 2016 WL 796095, at *3 (N.D. Cal. Feb. 23, 2016) ("a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case."). The intimate details of Plaintiff's disputes with other parties has minimal relevant to this action, and runs a significant risk of causing a "mini-trial" on the validity of Plaintiff's claims against these other parties. *See Holmes v. Miller*, 768 Fed. Appx 781, 784 (2019) (upholding exclusion of evidence where introduction "likely would have resulted in mini-trials."); *Seal4Safti, Inc. v. California Expanded Metal Products Co.*, 2022 WL 2199831, at *2 (C.D. Cal. Apr. 26, 2022) ("The Court will not permit the parties to have a mini-trial about what happened in the Washington Litigation.").

[2] The only documents in Plaintiff's possession, custody, or control associated with this litigation are the official court records. Plaintiff additionally does not intend to log post-litigation with its counsel in that action.

additional documents based on Plaintiff's speculation that it is 'beyond belief' that there are no other documents responsive to Plaintiff's request. Unless Plaintiff can identify a specific document that Defendants withheld from Plaintiff, the Court is satisfied with Defendants' response."); *Littlefield v. NutriBullet, L.L.C.*, 2017 WL 10439692, at *2 (C.D. Cal. Dec. 20, 2017) ("the court cannot order a party to produce documents that do not exist. A mere suspicion that additional documents must exist is an insufficient basis to grant a motion to compel."); *Unilin Beheer B.V. v. NSL Trading Corp.*, 2015 WL 12698284, at *6 (C.D. Cal. Sept. 17, 2015) ("A court cannot order a party to produce documents that do not exist, much less impose sanctions for the failure to produce documents solely on the speculation that documents must logically exist due to the paucity of a production.")

Here, Plaintiff has produced all documents in its possession, custody, or control responsive to these requests. Defendant does not have an iota of evidence that Plaintiff has not done so. Defendant is, of course, free to argue for any implications they want based on the non-existence of these materials, but further aggressive emails, letters, and even Court orders won't create documents out of thin air. *Unilin*, 2015 WL 12698284, at *5 ("However frustrated Plaintiffs may have been pursuing discovery from a Defendant who does not operate his business in a manner that may perhaps be typical of Plaintiffs' business partners and clients, Plaintiffs' evidence and arguments do not support a motion to compel, much less a motion for sanctions.")

Plaintiff remains willing (and does) continue to search for additional responsive materials in the unlikely event that anything was missed. In the unlikely event it was, Plaintiff will produce those records.

**Defendant's Position:**

As noted in Defendant's prior position statement to the Court, Defendant's requests are not – and were not – as limited as Plaintiff suggests, though now

1 somewhat streamlined. Given Plaintiff's theory that it lost an opportunity for a
2 "premiere" of its series as a result of the inadvertent release of the series in one of
3 the territories discussed and is demanding millions of dollars as a result, it is
4 important to understand the nature and scope of how Plaintiff's series premiered on
5 Amazon Prime before the inadvertent release via Defendant. Plaintiff did not make
6 Defendant aware of the fact that the content was already available in the same sort
7 of format to others, an issue that goes to unclean hands and mitigation of damages
8 as well as undercuts Plaintiff's theory (which Defendant contends is speculative in
9 any event). Defendant raised the Amazon.com/Prime Video issue with Plaintiff's
10 counsel multiple times starting several months prior to the filing of the suit in
11 December 2021, and the series' appearance online such as on Amazon.com and
12 Prime Video is even mentioned in filings with the Court. (ECF 36, 37, 40.)[3]

13     Until Plaintiff's current counsel appeared, Defendant was under the
14 impression that the use on Amazon.com/Prime Video was authorized. After all,
15 how does one get an entire series onto a platform like Amazon Prime without high-
16 quality access to the original? But Plaintiff's current counsel has now indicated
17 that these uses are unauthorized, despite not pursuing extensive use on Amazon
18 Prime within the statute of limitations while pursuing this low-value claim against
19 Defendant.

20     Despite several discovery requests specifically asking for documents at the
21 core of this issue, Plaintiff has failed to produce any documents other than a recent
22 set of terms of service from Amazon Prime, and Plaintiff has refused to place
23 relevant privileged communications in a log. There are no demand letters or term
24 sheets relating to the content in the production. It is impossible to determine which
25 story is correct, much less understand whether Plaintiff knew of the uses at the
26 time it discussed with Defendant the possibility of distribution, whether they were

---

[3] Further, the content in suit has been available in full on YouTube for well over five years.

1 licensed and for how much, and what steps Plaintiff took to ensure that the content
2 Defendant was to receive was as Plaintiff represented. Every discussion to try to
3 come to a point of agreement on discovery on this issue seems to result in a
4 different story. That includes in today's joint report, where Plaintiff asserts no
5 documents exist.

6     For the reasons stated above, it is implausible that documents do not exist
7 that would show either: (a) whether and when Plaintiff consented to the license of
8 the at-issue content and at what price; or (b) if Plaintiff did not so consent, when it
9 discovered the use(s), what steps it took to address the unauthorized uses, and what
10 pricing might apply to any resolution of the matter(s). As noted, it is simply
11 implausible that Plaintiff has been pursuing Defendant relentlessly over an
12 inadvertent and minor release of the content for a short period of time in one
13 territory, but has ignored for years full-scale exploitation that Defendant informed
14 Plaintiff about well over two years ago. If five years of full exploitation is not
15 worth disclosing to Defendant much less sending a demand letter, then there
16 appears to be no basis for Plaintiff's long-running dispute against Defendant for
17 the inadvertent release of the series for a brief period of time, which was scarcely
18 discovered by the public and led to revenues of $106.32.

19     Accordingly, Defendant respectfully requests that Plaintiff be ordered to
20 produce documents pertaining to the authorized or unauthorized use of the series at
21 issue on Amazon/Amazon Prime, YouTube, and any other digital, online, or
22 streaming platform, including any contracts that show the agreed-upon pricing
23 structure and revenues for the exploitation of the series. To the extent Plaintiff
24 contends that relevant documents are privileged, Defendant should log them and
25 timely produce said log.

26
27 DATED: November 24, 2023      THOITS LAW
28

Mitchell Silberberg & Knupp LLP

11
**JOINT DISCOVERY STATUS REPORT**

By: */s/ John van Loben Sels*
John van Loben Sels
Attorneys for Plaintiff
LIVN Worldwide Ltd.

DATED: November 24, 2023     MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Eleanor M. Lackman*
Eleanor M. Lackman
Attorneys for Defendant
Vubiquity Inc.