1  ELEANOR M. LACKMAN (SBN 298594)
   eml@msk.com
2  BRANDON E. HUGHES (SBN 329947)
   beh@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
4  Los Angeles, CA 90067
   Telephone:  (310) 312-2000
5  Facsimile:   (310) 312-3100

6  Attorneys for Defendant Vubiquity Inc.

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                    **WESTERN DIVISION**

11 | LIVN Worldwide Ltd., a Mauritius limited company, | CASE NO. 2:21-cv-09589-AB-KS

12 |                                                    | Honorable André Birotte Jr.

13 |          Plaintiff,                                | **DEFENDANT VUBIQUITY INC.'S NOTICE OF MOTION AND**

14 |      v.                                            | **MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF**

15 | Vubiquity Inc., a Delaware corporation; and DOES 1 through 10, | **POINTS AND AUTHORITIES IN SUPPORT THEREOF**

16 | inclusive,                                         |

17 |          Defendant.                                | *[Statement of Uncontroverted Material Facts; Declaration of Brandon E.*

18 |                                                    | *Hughes; Declaration of James Finlay;*

19 |                                                    | *Declaration of Jason Keiles; and Proposed Order filed concurrently*

20 |                                                    | *herewith*

21                                     Date:        April 5, 2024
                                       Time:        10:00 a.m.
22                                     Location:    Courtroom 7B
                                                    350 W. 1st Street
23                                                  Los Angeles, CA 90012

24                                     File Date:   December 10, 2021
                                       Trial Date:  July 23, 2024
25

26

27

28

---

**VUBIQUITY'S MOTION FOR SUMMARY JUDGMENT**                    1
                                                              A

**TO PLAINTIFF AND PLAINTIFF'S ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 5, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 5D, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant Vubiquity, Inc. ("Vubiquity") will and hereby does move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order: (1) dismissing LIVN Worldwide Ltd.'s ("Plaintiff") claim for copyright infringement due to Plaintiff's lack of standing; (2) dismissing Plaintiff's complaint for copyright infringement because all volitional actions were approved by Plaintiff; and (3) dismissing Plaintiff's complaint for indirect and speculative damages.

This Motion is made following conference of counsel pursuant to L.R. 7-3 which took place on February 23, 2024. The parties were unable to reach a resolution to eliminate the necessity of a hearing.

This Motion is and will be based upon this Notice of Motion and Motion for Summary Judgment; the accompanying Memorandum of Points and Authorities; the Statement of Uncontroverted Facts and Conclusions of Law; the Declaration of Brandon E. Hughes, and the Exhibits submitted in support hereof; the Declaration of James Finlay, and the Exhibits submitted in support hereof; all other matters of which the Court may take judicial notice; the pleadings and papers on file herein; any Reply and supporting pleadings and exhibits that may be filed in support; and upon such other or further material as may be presented at or before the hearing of this matter.

Mitchell
Silberberg &
Knupp LLP

1   DATED: March 1, 2024

2                                              RESPECTFULLY SUBMITTED,

3                                              ELEANOR M. LACKMAN
                                               BRANDON E. HUGHES
4                                              MITCHELL SILBERBERG & KNUPP LLP

5                                              By: /s/ Eleanor M. Lackman
6                                                   Eleanor M. Lackman
                                                    Brandon E. Hughes
7                                                   Attorneys for Defendant
                                                    Vubiquity Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

1

# **TABLE OF CONTENTS**

2

**Page**

3  I.   INTRODUCTION ..........................................................................................1

4  II.  STATEMENT OF RELEVANT FACTS .....................................................2

5
6  III. LEGAL STANDARD....................................................................................6

7  IV.  ARGUMENT.................................................................................................8

8      A.   Because Plaintiff Has Failed to Establish That the Series Is
            Excused From the Registration Requirement, Plaintiff Lacks
9           Standing to Sue for Copyright Infringement. ......................................8

10     B.   All Express Actions That Vubiquity Took With Respect to the
11          Series Were Authorized..........................................................................9

12     C.   Including Because Plaintiff Has Conceded That a Share of
            Vubiquity's Revenue Is the Proper Measure of a License Fee,
13          Plaintiff's Request for Damages Beyond Such Amount Fails as a
14          Matter of Law. ......................................................................................12

15  V.   CONCLUSION............................................................................................16

16

17

18

19

20

21

22

23

24

25

26

27

28

i

**VUBIQUITY'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970)..................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..............................................................................6, 7

*Cartoon Network LP v. CSC Holdings, Inc.*,
536 F.3d 121 (2d Cir. 2008)...................................................................11

*Cell Film Holdings, LLC v. Newcomb*,
2017 WL 5615171 (D. Or. Oct. 12, 2017)............................................14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................7

*CoStar Group, Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) .................................................................11

*Fazio v. City & County of San Francisco*,
125 F.3d 1328 (9th Cir. 1997) ................................................................7

*Fed. Ins. Co. v. Burlington N. & Santa Fe Ry. Co.*,
270 F.Supp.2d 1183 (C.D. Cal. 2003) ....................................................7

*Fleming v. Miles*,
181 F.Supp.2d 1143 (D. Or. 2001) .......................................................15

*Fourth Estate Public Benefit Corp. v. Wall-Street.com*,
139 S. Ct. 881 (2019)...........................................................................8, 9

*Fox Broad. Co. v. Dish Network LLC*,
160 F.Supp.3d 1139 (C.D. Cal. 2015) ..................................................10

*Gardner v. CafePress Inc.*,
2014 WL 6890934 (S.D. Cal. Dec. 4, 2014)..........................................10

*Gray v. Perry*,
2019 WL 2992007 (C.D. Cal. July 5, 2019).........................................15

Mitchell
Silberberg &
Knupp LLP

ii

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

4

*Jarvis v. K2 Inc.*,
   486 F.3d 526 (9th Cir. 2007) ....................................................... 12, 15

5

6

*Koenig v. Beekmans*,
   2018 WL 297616 (W.D. Tex. Jan. 4, 2018) ...................................... 14

7

8

*Lahiri v. Universal Music & Video Distribution Corp.*,
   2006 WL 6030551 (C.D. Cal. Mar. 24, 2006) ................................... 15

9

10

*Mackie v. Rieser*,
   296 F.3d 909 (9th Cir. 2002) ....................................................... 12, 15

11

12

*Mende v. Dun & Bradstreet, Inc.*,
   670 F.2d 129 (9th Cir. 1982) ............................................................. 6

13

14

*On Davis v. The Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001) ............................................................. 12

15

*Parker v. Google, Inc.*,
   242 Fed.Appx. 833 (3d Cir. 2007) (per curiam) ................................ 11

16

17

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ...................................................... 10, 11

18

19

*Rearden LLC v. Walt Disney Co.*,
   2022 WL 2064976 (N.D. Cal. June 8, 2022) .................................... 15

20

21

*Reinsdorf v. Skechers U.S.A.*,
   922 F.Supp.2d 866 (C.D. Cal. 2013) ............................................... 15

22

23

*Rimini St., Inc. v. Oracle Int'l Corp.*,
   473 F.Supp.3d 1158 (D. Nev. 2020) ................................................ 10

24

25

*Ruiz v. Walmart Inc.*,
   2021 WL 4796960 (C.D. Cal. Apr. 27, 2021) .................................... 14

26

*SA Music, LLC v. Amazon.com, Inc.*,
   No. 2:20-CV-00105-BAT, 2020 WL 3128534 (W.D. Wash. June
   12, 2020), *reconsideration denied*, 2020 WL 3798935 (W.D.
   Wash. July 7, 2020), *and mot. to certify appeal denied*, 2020 WL
   4501518 (W.D. Wash. Aug. 5, 2020) ............................................... 11

27

28

iii

# TABLE OF AUTHORITIES

**Page(s)**

*Schmidt v. Baldy*,
  2019 WL 5389867 (C.D. Cal. Oct. 19, 2019) ...................................................... 15

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
  562 F.2d 1157 (9th Cir. 1977) ............................................................................ 12

*Swift Harvest USA, LLC v. Boley Int'l HK Ltd.*,
  2020 WL 7380148 (C.D. Cal. Sept. 22, 2020) ..................................................... 8

*Thale v. Apple Inc.*,
  2013 WL 3245170 (N.D. Cal. June 26, 2013) ..................................................... 15

## STATUTES

17 U.S.C.
  § 101................................................................................................................... 8, 9
  § 104(b) .................................................................................................................. 8
  § 106..................................................................................................................... 11
  § 106(3) ................................................................................................................ 11
  § 411(a) .................................................................................................................. 8
  § 412....................................................................................................................... 9
  § 504(b) .................................................................................................... 9, 12, 15
  § 504(c) ................................................................................................................... 9
  § 505....................................................................................................................... 9

## OTHER AUTHORITIES

2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright §
  7.16(B)(6)(d) (2022) ............................................................................................. 8

Fed. R. Civ. Proc.
  Rule 30(b)(6)........................................................................................................... 9
  Rule 56(a)................................................................................................................ 6
  Rule 56(c)(1)(B)...................................................................................................... 7

Mitchell
Silberberg &
Knupp LLP

**VUBIQUITY'S MOTION FOR SUMMARY JUDGMENT**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        This long-running lawsuit relates to the inadvertent release on Apple's

4  iTunes platform of a Chinese-language martial-arts drama series, which release

5  netted only $106.32 in revenues.  Despite two motions to dismiss and the whittling

6  down of plaintiff LIVN Worldwide Ltd.'s ("Plaintiff") wide-reaching complaint to

7  one cause of action, Plaintiff has persisted in seeking windfall damages over one

8  fact: the inadvertent failure to inform iTunes not to release the television series.

9        There are several problems with Plaintiff's claim. First, Plaintiff has not

10  shown that the series at issue, *Martial Universe* (the "Series"), is subject to the

11  foreign-works exemption from copyright registration. Without registration, there is

12  no standing to sue. Second, every volitional act that defendant Vubiquity Inc.

13  ("Vubiquity") took with respect to the copyrighted material—from the ingestion of

14  the Series to the delivery to iTunes to the setting of a date—was with the

15  knowledge and/or approval of Plaintiff as part of the processing. iTunes' (not

16  Vubiquity's) making the Series available, after Plaintiff "ghosted" Vubiquity, was

17  due to an *absence* of action, not any affirmative steps. This means Vubiquity

18  cannot be liable for copyright infringement. Nor is making a work available

19  infringement in any case. Third, despite expressly agreeing to a straight 65/35%

20  revenue share for payment for the Series (here, roughly $69 total), Plaintiff now

21  disingenuously claims it is entitled to at least $1,800,000 in damages.

22  Unfortunately for Plaintiff, such speculative damages are not available under the

23  law, nor has Plaintiff demonstrated entitlement to anything other than the $69

24  share.

25        The Court has expended enough resources on Plaintiff's misguided view that

26  it can take advantage of an omission of a step to tell Apple to hold the Series back,

27  and somehow claim that a payment structure that Plaintiff ***expressly agreed to***

28  should be disregarded in favor of an implausible fee that has no precedent and

Mitchell
Silberberg &
Knupp LLP

would result in a windfall of over **twenty-six thousand times** the amount to which a willing buyer and willing seller would agree. It is no wonder that Vubiquity has never paid this sort of money for any series, much less one that Plaintiff had distributed all over the internet without informing Vubiquity. Nor is it any surprise that Plaintiff's expert (who had no relevant experience in television licensing) abandoned much of his report during the expert deposition. Vubiquity is not liable for the making available of the work, and even if it was, Plaintiff cannot show that it is entitled to more than the $69 that resulted from the distribution. This Court should enter judgment accordingly.

## II.    STATEMENT OF RELEVANT FACTS

Vubiquity (a subsidiary of Amdocs Limited), is a global media and entertainment technologies, products, and services provider. UMF 4. Vubiquity provides services across the entire media supply chain, including content processing and readying content for distribution through customer-facing platforms. *Id.* Vubiquity has tens of thousands of titles aggregated and licensed annually to various endpoints, including Apple's iTunes and channels services. UMF 5.

Among other things such as offering handbags, Plaintiff is in the business of licensing and relicensing media content. UMF 2. It is a relatively young company, and the owners did not acquire rights in the Series until 2019. UMF 3.

The parties worked together prior to the events at issue. In 2018, the parties entered into a licensing agreement for various foreign content, where Vubiquity would work with its customers to facilitate the distribution of the content. UMF 7. However, the content Plaintiff supplied had issues, including technical and rights issues. *Id.* To address these issues, Plaintiff provided replacement content and a longer term of use at no cost. *Id.*

On December 4, 2018, Nadeem Sham – Plaintiff's CEO – contacted Vubiquity's subsidiary Juice Worldwide about licensing certain Chinese television

Mitchell
Silberberg &
Knupp LLP

series for the iTunes platform, including the Series, a niche Chinese-language martial arts drama series consisting of 60 episodes over two seasons. UMF 1. This deal would have been its first time offering titles on an a-la-carte style, electronic sell-through (EST) basis (as compared to subscription- or advertising-based structures) and indeed, according to Plaintiff's testimony, remains its only such deal on an EST basis. UMF 32.

On June 10, 2019, Vubiquity replied that it "might be able to help with [their] iTunes titles on a rev[enue] share basis (no upfront). But [it would] need to get them in and delivered before the end of June [2019]." UMF 21. The next day, Mr. Sham promptly and firmly agreed: "if we can work on a pure rev share basis, then we can proceed," and represented that Plaintiff could "get [the] material delivered to you" within "a few days." UMF 22. As to a license fee, Vubiquity proposed a "35% distribution fee against [g]ross [r]evenue," and Plaintiff reiterated that it was "okay with the terms." UMF 24, 26, 28. To facilitate delivery of the content, Plaintiff promised to "dispatch the Master Files so [Vubiquity] can encode as needed for each platform." UMF 27. On June 13, 2019, Vubiquity emailed Plaintiff a draft agreement which provided "Vubiquity shall remit to Licensor fees generated from the Licensed Titles […] less thirty-five percent (35%) of the Gross Revenue which Vubiquity shall retain[.]" UMF 28.

The next day, Plaintiff responded with comments. Plaintiff had no issue with the pricing or other terms, including placing the responsibility for (and cost relating to) marketing on Plaintiff, but instead began to protest against Vubiquity's standard clause requiring insurance to protect against third-party copyright infringement claims. UMF 56-58. Plaintiff asked that Vubiquity "remove this clause as [their Errors and Omissions] policy" did not cover "acquired content." UMF 57. Unbeknownst to Vubiquity, at this point, Plaintiff had already entered into a March 31, 2019, agreement providing a company called Olympusat Holdings, Inc. with purportedly *exclusive* subtitled language rights for the Series,

meaning that Plaintiff could not even give the rights it was offering to Vubiquity. UMF 16-18.

As the business side discussed the insurance issue, progress was being made on the technical side. Plaintiff consented to Vubiquity taking the "necessary steps to confirm that [the Series] was compatible with the iTunes platform, including a technical review of the content." UMF 40. On June 19, 2019, the master files were delivered and processing began. UMF 35, 39, 40. Vubiquity gave Plaintiff authorization to make an account where Plaintiff could monitor the metadata and production status of the delivered content. UMF 41. Over the course of the next month, Vubiquity conducted a technical review of the master files and repeatedly flagged quality control issues with Plaintiff. UMF 33-39, 43, 44. On June 20, 2019, Vubiquity flagged that its "ingest team [had] noticed some ghosting" – a visual quality defect – in the files for the show *The Legend of Hao Lan*. UMF 36. On June 21, 2019, Plaintiff was alerted that it had failed to provide a "season-level synopsis for each TV show," including the Series. UMF 38. On June 24, 2019, Plaintiff was alerted that the supplied subtitles – including those for the Series – "did not appear to be formatted correctly."[1] UMF 37.

Plaintiff consented to the delivery of the Series to iTunes. UMF 46. On July 3, 2019, Plaintiff was informed that one of the titles had already been delivered to iTunes and that the Series would be delivered to iTunes "in the coming week." UMF 42. On July 16, 2019, Vubiquity alerted Plaintiff that it discovered corruption in other submitted files, and stated it "won't be able to deliver the corrupt files to iTunes." UMF 43. Plaintiff did not finish "assess[ing] the problem" and correcting it until July 25, 2019. UMF 44. Plaintiff's quality control issues delayed the

---

[1] Upon delivery, iTunes engages in its own proprietary checks and processing – including, at times, creating thumbnail images from "screengrabs" of episodes to include next to each episode title, and engaging in a prepublication human review. UMF 54. The aggregator does not create or supply any per-episode artwork; at best, it may have received the artwork for the *season* and would have passed that along for use in marketing the season overall. UMF 51.

Mitchell
Silberberg &
Knupp LLP

1   delivery of the Series to iTunes, but, at no point, did Plaintiff object to the Series

2   being delivered to iTunes. UMF 45-48. Indeed, through July 25, 2019, Plaintiff

3   continued to supply content to Vubiquity to supply to iTunes. UMF 44.

4          As part of the delivery process, Apple requests that scheduling forms be

5   submitted prior to upload. UMF 49. These scheduling forms indicate when the

6   content is scheduled to go live on the iTunes platform – typically 30 to 45 days

7   from upload to give iTunes time to complete processing of the content. UMF 50.

8   Due to Plaintiff's quality control issues and the attendant delays, a projected

9   "placeholder" sale start date was pushed from July 26, 2019 to October 1, 2019.

10  UMF 53.

11         Plaintiff stopped responding to communications in late July 2019. UMF 61-

12  63. Plaintiff's last business negotiation email with Vubiquity was sent on June 19,

13  2019. UMF 62. Vubiquity reiterated its insurance concerns the following day.

14  UMF 63. At that point, Plaintiff's negotiations representatives stopped responding

15  to emails. UMF 62. But on the technical side, Plaintiff's team continued addressing

16  Vubiquity's quality control concerns and submitting new files through July 25,

17  2019. UMF 44, 45. Accordingly, not realizing that Plaintiff had likely stopped

18  responding out of its unwillingness to explain that the reason it could not warrant

19  as to non-infringement was due to having given exclusive rights to Olympusat,

20  Vubiquity continued to follow up through July 31, 2019, by which point the Series

21  was with iTunes. UMF 64.

22         Once Vubiquity transferred the Series files to iTunes, Vubiquity took no

23  further action to facilitate the unlocking or distribution of the Series. UMF 65. In

24  the confusion caused by Plaintiff's abandonment of the deal, the projected release

25  date was not changed, and Apple made the Series available for electronic sell-

26  through (EST) sales on October 1, 2019. UMF 64. Nearly a year later, on

27  September 4, 2020, Plaintiff took note of the Series availability on iTunes, alerted

28  Vubiquity, and both parties took action to have iTunes disable sales of the Series

Mitchell
Silberberg &
Knupp LLP

5

1   immediately. UMF 66, 69, 71. Over the Series' availability, the Series generated

2   approximately $106.32 in gross revenue. UMF 72.

3       Following notice of Plaintiff's initial claim, Vubiquity discovered that the

4   Series had already been widely released before Plaintiff began talks with

5   Vubiquity. Apart from the disclosure Plaintiff made about the March 2019 deal

6   with Olympusat, it appears that the Series had already been widely distributed in

7   the United States many months before. For example, the Series was initially aired

8   on China's Dragon TV in 2018. UMF 11. The show was simultaneously aired on

9   Dragon TV in the United States. *Id.* The Series was available on a public YouTube

10  channel – MZTV – back in 2018, and still is. UMF 12. The Series was also for sale

11  on Amazon's Prime Video platform, showing a date of August 6, 2018, where

12  customers could purchase individual episodes or entire seasons of the show. UMF

13  13. There are currently customer reviews for the Series on its Prime Video page

14  that go as far back as June 2019. *Id.* Plaintiff has, thus far, been unable to explain

15  how the show remains available on Prime Video and under what rights. *Id.*

16  Nevertheless, Plaintiff claims to have paid for and acquired purportedly exclusive

17  rights to the Series. UMF 14.

## III.   LEGAL STANDARD

19      "The Court shall grant summary judgment if the movant shows that there is

20  no genuine dispute as to any material fact and the movant is entitled to judgment as

21  a matter of law." Fed. R. Civ. Proc. 56(a). "The very mission of the summary

22  judgment procedure is to pierce the pleadings and to assess the proof in order to

23  see whether there is a genuine issue of fact." *Mende v. Dun & Bradstreet, Inc.*, 670

24  F.2d 129, 132 (9th Cir. 1982). The "existence of some alleged factual dispute

25  between the parties will not defeat an otherwise properly supported motion for

26  summary judgment; the requirement is that there be no genuine issue of material

27  fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). To avoid

28  summary judgment "there must be evidence on which the jury could reasonably

Mitchell
Silberberg &
Knupp LLP

find for the" party opposing summary judgment in light of the "substantive evidentiary burden" applicable at trial. *Id.* at 252, 266.

The party moving for summary judgment bears the initial burden of demonstrating with admissible evidence that there is no disputed issue of material fact as to a claim for relief or affirmative defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may obtain summary judgment by submitting uncontroverted evidence that affirmatively disproves an essential element of the opposing party's claim or defense. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970). Alternatively, the moving party may carry its initial burden by demonstrating that the opposing party lacks sufficient evidence to prove its claim or affirmative defense at trial. Fed. R. Civ. Proc. 56(c)(1)(B); *Celotex*, 477 U.S. at 325.

Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to show a triable issue of material fact. At that point, "[t]he non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial." *Fed. Ins. Co. v. Burlington N. & Santa Fe Ry. Co.*, 270 F.Supp.2d 1183, 1185 (C.D. Cal. 2003). The party opposing summary judgment may "not rest on his allegations ... to get to a jury" and avoid summary judgment. *Anderson*, 477 U.S. at 249. "[I]nstead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249). The question is not whether the non-moving party is able to muster any evidence that would support its claim for relief but "whether [the evidence] is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

Mitchell
Silberberg &
Knupp LLP

IV.   **ARGUMENT**

      A.   **Because Plaintiff Has Failed to Establish That the Series Is Excused From the Registration Requirement, Plaintiff Lacks Standing to Sue for Copyright Infringement.**

Plaintiff alleges that it is the exclusive licensee of the rights in *Martial Universe*, and claims protection under the Berne Convention. Compl. ¶¶ 9, 37. Noticeably absent from Plaintiff's Complaint is a registration number from the U.S. Copyright Office. Further, despite raising the issue as Vubiquity's Second Affirmative Defense, at no time has Plaintiff ever cited any U.S. copyright registration or even alleged that the Series is registered with the U.S. Copyright Office. UMF 3.

While the Berne treaty does provide rights, it does not provide standing to sue without a prior registration unless the work falls into the foreign-works exemption. *See* 17 U.S.C. § 411(a); *Fourth Estate Public Benefit Corp. v. Wall-Street.com*, 139 S. Ct. 881, 885 (2019). "The burden to show this exemption remains on the party claiming it." 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16(B)(6)(d) (2022). If the work is not a "foreign work," then the exception does not apply, and Plaintiff would have to demonstrate that the Series is registered with the U.S. Copyright Office. *See*, *e.g.*, *Swift Harvest USA, LLC v. Boley Int'l HK Ltd.*, 2020 WL 7380148, \*10 (C.D. Cal. Sept. 22, 2020). Plaintiff has not done so.

The Series is based on a Chinese book, starring Chinese actors, and produced in the Chinese language. However, this does not make the Series a foreign work. Works published simultaneously in the United States and another treaty party are considered "United States works" for registration purposes. *See* 17 U.S.C. § 104(b); *id.* at § 101 (definition of "United States work"). Plaintiff's corporate witness admitted that the series first aired on Dragon TV, a Chinese-language channel that distributes content into the United States, at the same time

that it was first available in China on August 7, 2018. *See* UMF 11. Amazon Prime's U.S.-facing site shows a release date of August 6, 2018 (which, depending on the hour, would be August 7 in China). UMF 13. Despite this issue being subject to the Fed. R. Civ. P. 30(b)(6) deposition notice, Plaintiff has never been able to provide any evidence indicating that its predecessor[2] at the time of first offer to distribute the show in general, did not offer it to a U.S. distributor or broadcaster for further distribution to the public. *See* 17 U.S.C. § 101 ("offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication."). Accordingly, Plaintiff's failure to properly register the Series with the U.S. Copyright Office requires dismissal for lack of standing. *See Fourth Estate*, *supra*, at 885.

The absence of the registration also means that Plaintiff is not entitled to elect statutory damages under 17 U.S.C. § 504(c) or seek attorney's fees under 17 U.S.C. § 505. *See* 17 U.S.C. § 412 ("no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for" infringements commenced before registration). As discussed below, even if Plaintiff manages to prevail on liability (which as explained herein it cannot), it is limited to its actual damages and Vubiquity's attributable profits to the extent not duplicative. 17 U.S.C. § 504(b).

## B. All Express Actions That Vubiquity Took With Respect to the Series Were Authorized.

Plaintiff, eager to get the Series onto iTunes, was deeply involved in the process that led to the delivery of the Series to the iTunes platform. *See* UMF 35-46. Vubiquity even expressly informed Plaintiff of the delivery to iTunes for "full processing" while the parties were working on their long-form agreement to fully

Mitchell Silberberg & Knupp LLP

---

[2] Plaintiff allegedly acquired the distribution rights in or around March 2019. UMF 14.

memorialize their deal terms. *See* UMF 42-46. The parties initially expected that the Series would be released on July 26, 2019, and that was the date supplied to iTunes. UMF 53. However, with the technical issues and other quality problems continuing to be worked on through July 24, Vubiquity pushed the release date to October 1, 2019. *Id.* It was not until some time later that it appeared that Plaintiff was backing out of the deal—albeit by virtue of going radio silent for longer than usual.

At least through July 2019, Plaintiff continued performing despite being aware of what was occurring. UMF 42-46. Plaintiff's corporate witness conceded as much, and conceded that Plaintiff never objected either. *Id.* Whether Plaintiff's acts of continuing to send content constitutes an express or implied agreement to Vubiquity's acts, the outcome is the same. *See Rimini St., Inc. v. Oracle Int'l Corp.*, 473 F.Supp.3d 1158, 1195–96 (D. Nev. 2020) (implied license may be found where copyright owner engages in conduct "from which the other party may properly infer that the owner consents to his use" . . . "Consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it.") (cleaned up).

Indeed, when put to the test, Plaintiff concedes that the *only* unauthorized event was iTunes' release of the Series on October 1, 2019. UMF 40, 45, 46, 64, 65. But this release was only the consequence of inaction, not action. And an "act" is what the law requires. In particular, to establish direct infringement, a plaintiff must demonstrate three things: (1) plaintiff's ownership of the allegedly infringed material; (2) that *the alleged infringers* violated at least one exclusive right granted to copyright holders; and (3) that the alleged infringing *conduct* was *volitional*. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (citing 17 U.S.C. § 106); *see also Gardner v. CafePress Inc.*, 2014 WL 6890934, at *3 (S.D. Cal. Dec. 4, 2014); *Fox Broad. Co. v. Dish Network LLC*, 160 F.Supp.3d 1139,

1160 (C.D. Cal. 2015); *see also Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("[V]olitional conduct is an important element of direct liability"); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) ("[T]he Copyright Act ... requires conduct by a person who causes in some meaningful way an infringement."); *Parker v. Google, Inc.*, 242 Fed.Appx. 833, 836 (3d Cir. 2007) (per curiam) ("[T]o state a direct copyright infringement claim, a plaintiff must allege volitional conduct on the part of the defendant.").

The volition element "is a basic requirement of causation." *Perfect 10, Inc.*, 847 F.3d at 666 ("[D]*irect* liability must be premised on conduct that can reasonably be described as the *direct* cause of the infringement[.]"). From the time of the apparent end of the discussions and relationship to the time of the release, there was no "conduct" engaged in by Vubiquity—much less conduct that resulted in *Vubiquity* violating any of the enumerated rights.

Moreover, the reason that the Series was released was due to Apple's processes: it recognized the release date and made the Series available accordingly. Accordingly, if any party is responsible under the provisions of the Copyright Act, it is Apple. Nonetheless, even if Plaintiff had sued Apple within the statute of limitations (which it never did), Apple still would not be liable. *SA Music, LLC v. Amazon.com, Inc.*, No. 2:20-CV-00105-BAT, 2020 WL 3128534, at *3 (W.D. Wash. June 12, 2020), *reconsideration denied*, 2020 WL 3798935 (W.D. Wash. July 7, 2020), *and mot. to certify appeal denied*, 2020 WL 4501518 (W.D. Wash. Aug. 5, 2020) (Amazon's making available of works did not violate any right under 17 U.S.C. § 106, including the distribution right under Section 106(3)). Plaintiff never sought to pursue those who accessed and requested the material either, even though they were the parties that triggered the distribution through their own volition (albeit without knowledge of any unauthorized use).

Rather, Plaintiff wishes to pin the fault on a party that worked cooperatively to perform under an agreement that Plaintiff wanted, and regarding which Plaintiff

Mitchell
Silberberg &
Knupp LLP

11

did not have a modicum of courtesy—being aware that the Series was delivered to iTunes—to inform Vubiquity that the deal was over. But under the legal test, the fault does not lie with Vubiquity: Vubiquity did not infringe nor did anyone's infringement occur due to Vubiquity's volitional conduct. Therefore, Plaintiff has failed to establish fundamental elements of its copyright infringement claim, and it should be dismissed accordingly.

### C. Including Because Plaintiff Has Conceded That a Share of Vubiquity's Revenue Is the Proper Measure of a License Fee, Plaintiff's Request for Damages Beyond Such Amount Fails as a Matter of Law.

Assuming *arguendo* that Plaintiff can prevail against Vubiquity on Plaintiff's claim for copyright infringement, which as noted above Plaintiff cannot for multiple reasons, Plaintiff's damages request spills well beyond what Plaintiff would be entitled to argue at trial. Plaintiff's Second Amended Complaint, to the extent it remains operative, provides little clarity about what form of damages it seeks. However, Plaintiff's nine-page expert report does: it claims $28,000 to $35,000 per episode, or a total of $1,680,000 to $2,100,000, for a series that earned $106.32 in total revenue. As a matter of law, this sort of range is unsupported and untenable.

Actual damages for copyright infringement are governed by 17 U.S.C. § 504(b), which states that "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." *Jarvis v. K2 Inc.*, 486 F.3d 526, 533–34 (9th Cir. 2007). Actual damages can be calculated by proof of "what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work." *Id.*; *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977). The "market value approach is an objective, not a subjective, analysis," *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002); *see also On Davis v. The Gap, Inc.*, 246 F.3d 152, 166

1    (2d Cir. 2001) ("The question is not what the owner would have charged, but

2    rather what is the fair market value.").

3         Plaintiff's expert, Dr. Alan Goedde, agrees that a willing-buyer/willing-

4    seller test applies, yet he ignores the fact that here there *is* a perfect willing-

5    buyer/willing-seller relationship: Plaintiff and Vubiquity itself. From the moment

6    that the discussions started, Plaintiff unequivocally agreed to a "rev[enue] share

7    (no upfront)." UMF 21-23. Even though the parties subsequently agreed to all of

8    the fundamental terms, including a revenue share basis at 65/35% and no further

9    activity (such as marketing) required on Vubiquity's part, UMF 24-28, Dr. Goedde

10   ignores that history. Instead, he looks at two multiyear agreements[3] for subscription

11   video-on-demand (SVOD) and advertising-based video-on-demand (AVOD) in

12   Canada and Australia (each of which has a proportionately higher percentage of

13   Chinese diaspora), using figures that, again, came from Plaintiff. UMF 73. He does

14   so—for a transactional electronic-sell-through (TVEST) distribution applicable

15   here—despite noting that both the term of the license and type of license are

16   important. UMF 74.[4] Using simple math based on false information—including

17   using a subscriber base tied to *Apple Music* (UMF 75)—he comes up with a

18   windfall. Nowhere does he explain how or why he believes that his conclusion can

19   be reconciled with what the parties had discussed and agreed to, or how Vubiquity

20   would earn ***3.23 million dollars*** in revenue ***in one year***, on an already-stale niche

21   Chinese-language television show that Plaintiff had put all over the internet,[5]

22   _____

23   [3] During the course of the deposition, Dr. Goedde abandoned part VI.A. of his report, which had included an additional license agreement. UMF 80.

24   [4] Dr. Goedde admitted that he was unfamiliar with the different types of
25   transactional structures and the typical pricing associated with those structures, such as EST and TVOD (transactional video-on-demand). Indeed, he said he had
26   never heard of "electronic sell-through" or "EST" or "TVEST." He has never worked in the television content industry nor has ever opined on television licensing pricing models. UMF 76, 77.

27   [5] The Series was already available on Amazon Prime on a EST basis in 2018 and
28   has been performing poorly, receiving just 33 reviews after five years and just 30 reviews after two. Plaintiff has been on notice of this since early 2021, when

1  sufficient to pay out at the 65% rate that could be corroborated with the parties'

2  discussed expectations.

3      Tellingly, in his deposition, he sought to raise a purported benchmark

4  agreement that Plaintiff entered into in March 2019, but even this involves a

5  massive scope for every type of distribution imaginable, including the type that

6  (unlike EST) would involve an up-front payment, for a period of over five years, to

7  a territory with a population of roughly a billion people. UMF 81. Plainly this is

8  not and could not be a benchmark, and in any event, it comes too late. *See Ruiz v.*

9  *Walmart Inc.*, 2021 WL 4796960, at *2 (C.D. Cal. Apr. 27, 2021)

10  ("Supplementation does not 'create a loophole through which a party who submits

11  partial expert witness disclosures, or who wishes to revise her disclosures in light

12  of her opponent's challenges to the analysis and conclusions therein, can add to

13  them to her advantage after the court's deadline for doing so has passed.'");

14  *Koenig v. Beekmans*, 2018 WL 297616, at *5 (W.D. Tex. Jan. 4, 2018) ("[expert]

15  cannot cure deficiencies in his report by supplementing the report with deposition

16  testimony after the expert-designation deadline").

17      The end of the Goedde report includes a one-sentence reference to

18  undervaluation,[6] long-term impacts, and some purported loss of value regarding the

19  ability to post content on iTunes again, which Dr. Goedde conceded he did not

20  _____

21  Vubiquity discovered the use (which of course Plaintiff never disclosed). After
   recognizing the use and failing to say anything about it, Plaintiff took a new
   position on hiring new litigation counsel in this action: that the existence on

22  Amazon Prime was an infringement and there was no deal pertaining to the same
   and thus no documents to produce that might show the deal terms. Curiously,

23  despite the fact that the statute of limitations has run, Plaintiff has not sued
   Amazon, Plaintiff produced no correspondence other than one email to Amazon,

24  and the content remains available. UMF 78.

25  [6] Had Dr. Goedde given meaningful consideration to the question, he would have
   to admit that the price that iTunes set and the price that users paid is direct

26  evidence of proper pricing in the market. *See Cell Film Holdings, LLC*, 2017 WL
   5615171, at *4 (D. Or. Oct. 12, 2017) (rejecting plaintiff's "highly speculative"

27  damages arguments when "the very fact that users downloaded the Movie for free
   suggests they are *not* willing to pay $14.95 to watch the Movie" and plaintiff failed

28  "to account for the much lower cost of renting the Movie, or watching it on a
   subscription-based service, such as Netflix").

Mitchell
Silberberg &
Knupp LLP

know about and which was based on information that Plaintiff told him. UMF 82. Putting aside that Plaintiff has made no effort to support these theories, speculative damages claims are to be rejected. *Jarvis*, 486 F.3d at 533–34; *Gray v. Perry*, 2019 WL 2992007, at *2 (C.D. Cal. July 5, 2019) (Actual damages may only be determined by a hypothetical lost license fee if the amount is not a product of "undue speculation"); *Lahiri v. Universal Music & Video Distribution Corp.*, 2006 WL 6030551, at *3 (C.D. Cal. Mar. 24, 2006) (rejecting "speculative" lost good will and lost opportunities theories in copyright infringement action); *see also Thale v. Apple Inc.*, 2013 WL 3245170, at *7 (N.D. Cal. June 26, 2013); *Reinsdorf v. Skechers U.S.A.*, 922 F.Supp.2d 866, 881 (C.D. Cal. 2013) (rejecting expert report as "not grounded upon reliable methods or data, and [doing] no more than establish[ing] a speculative relationship between" the alleged "profits" and the alleged infringement); *Schmidt v. Baldy*, 2019 WL 5389867, at *3 (C.D. Cal. Oct. 19, 2019) (It would be "entirely speculative" to attempt to prove actual damages by a "vague decrease in revenues […] not tied to any infringement.").

Finally, Plaintiff fails to explain where this windfall seven-figure number is purported to originate. To the extent that Plaintiff is claiming indirect damages, the record contains no support. To "survive summary judgment on a demand for indirect profits pursuant to § 504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Mackie v. Rieser*, 296 F.3d 909, 915–16 (9th Cir. 2002); *Rearden LLC v. Walt Disney Co.*, 2022 WL 2064976, at *2 (N.D. Cal. June 8, 2022) (same); *Fleming v. Miles*, 181 F.Supp.2d 1143, 1153 (D. Or. 2001) ("There is no evidence that [Plaintiff] lost any sales as a result of the alleged infringement […] it would be pure speculation to suggest that this one item (from among the [Defendant's] entire portfolio) was responsible for inducing these clients to use [Defendant's] services. Certainly the record contains no evidence to support that contention.").

Plaintiff has hypothesized that the relationship gave Vubiquity—a company that processes thousands of titles annually—special status with iTunes, but that theory has been readily debunked. *See* UMF 5. Plaintiff's purported "lost opportunities" are based on reading things on the internet rather than testing out those theories, which Plaintiff could have done. UMF 79. It is not enough on summary judgment to simply throw something at the wall and hope it sticks. If Plaintiff has any hope of meeting both the legal and factual standards required for any type of damages—direct or indirect—Plaintiff must identify reasonable and admissible evidence. Plaintiff has had the opportunity to do so and has failed to show any proper monetary number to be attached other than 65% of $106.32, or $69.11.

## V.   CONCLUSION

For the foregoing reasons Vubiquity respectfully requests summary judgment as to Plaintiff's remaining claim of copyright infringement or, in the alternative, a ruling that Plaintiff's measure of damages is limited to the revenue share set forth and agreed in the parties' discussions, *i.e.*, $69.11.

DATED: March 1, 2024

RESPECTFULLY SUBMITTED,

ELEANOR M. LACKMAN
BRANDON E. HUGHES
MITCHELL SILBERBERG & KNUPP LLP

By: _/s/ Eleanor M. Lackman_
Eleanor M. Lackman
Attorneys for Defendant
Vubiquity Inc.

## <u>CERTIFICATION</u>

The undersigned, counsel of record for Vubiquity, Inc., certifies that this brief contains 5,337 words, which complies with the word limit of L.R. 11-6.1.

DATED: March 1, 2024                    RESPECTFULLY SUBMITTED,

ELEANOR M. LACKMAN
BRANDON E. HUGHES
MITCHELL SILBERBERG & KNUPP LLP


By:   /Eleanor M. Lackman/
     Eleanor M. Lackman
     Attorneys for Defendant
     Vubiquity Inc.

Mitchell
Silberberg &
Knupp LLP

**VUBIQUITY'S MOTION FOR SUMMARY JUDGMENT**

## **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years and am not a party to this action; my business address is Mitchell Silberberg & Knupp LLP, 2049 Century Park East, 18th Floor, Los Angeles, CA  90067-3120, and my business email address is ldm@msk.com.

On March 1, 2024, I served a copy of the foregoing document(s) described as **DEFENDANT VUBIQUITY INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**  on the interested parties in this action at their last known address as set forth below by taking the action described below:

| | |
|---|---|
| **THOITS LAW**<br>David Sarfati<br>John Van Loben<br>Brittany Nobels<br>400 Main St #250,<br>Los Altos, CA 94022<br>E-Mail: JvanLobenSels@thoits.com<br>        DSarfati@thoits.com<br>        BNobles@thoits.com | Attorneys for Plaintiff<br>LIVN Worldwide Ltd. |

☐   **BY MAIL**:  I placed the above-mentioned document(s) in sealed envelope(s) addressed as set forth above, and deposited each envelope in the mail at Los Angeles, California.  Each envelope was mailed with postage thereon fully prepaid.

☑   **BY ELECTRONIC MAIL**:  I served the above-mentioned document electronically on the date indicated herein, on the parties listed at the email addresses above and, to the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on March 1, 2024 at Los Angeles, California.

_/s/ Latoya Mckoy_____
                        Latoya Mckoy

Mitchell
Silberberg &
Knupp LLP