UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIVN Worldwide Ltd., a Mauritius limited company, <br><br> Plaintiff, <br><br> v. <br><br> Vubiquity Inc., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendant. | Case No. 2:21-cv-09589-AB-KS <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Dkt. No. 85]** |

Before the Court is Defendant Vubiquity Inc.'s ("Vubiquity") Motion for Summary Judgment ("Motion," Dkt. No. 85). Plaintiff LIVN Worldwide Ltd. ("LIVN") filed an opposition and Vubiquity filed a reply. The Court heard oral argument on Friday, May 10, 2024. The Motion is **GRANTED**.

## I.   BACKGROUND FACTS

Plaintiff LIVN asserts a claim for copyright infringement against Defendant Vubiquity arising out of a licensing deal that did not come to fruition, as follows.

LIVN is in the business of licensing and relicensing media content. Statement of Undisputed Facts[1] ("UF") 2. Vubiquity provides media services, including

---

[1] The parties' fact statements are at Dkt. Nos. 85 and 87. LIVN's Additional Facts ("AF") are in Dkt. No. 87. Vubiquity did not file a reply fact statement required by

processing and readying content for distribution through customer-facing platforms. UF 4.

LIVN acquired the rights to a 60-episode Chinese martial arts drama series called Martial Universe (the "Series") in March 2019. UF 14. In December 2018, LIVN's CEO Nadeem Sham emailed Vubiquity's Andrew Buck about licensing the Series for distribution on the Apple iTunes platform. UF 1. In June 2019, the parties began working in parallel tracks: on the business side, Sham and Buck worked towards negotiating a licensing agreement, while on the technical side, Vubiquity conducted, with LIVN's consent and cooperation, a technical review of the Series' master files to test them for compatibility with the iTunes platform and to upload them to iTunes. The parties agree that it is not unusual for technical processing of content to take place during business negotiations for that content. UF 52.

While the business negotiations were ongoing in June and July 2019, the parties' technical staffs resolved technical issues with the Series files. Eventually, Vubiquity uploaded the Series to iTunes and selected a placeholder "go live" date of October 1, 2019.

However, the business negotiations broke down. The last negotiation communication was a July 31 email from Vubiquity to LIVN, saying LIVN's lack of insurance for copyright infringement may be a dealbreaker. LIVN didn't respond, and the parties' negotiations stopped at that point with no deal in place.

But Vubiquity had already uploaded the Series to iTunes with an October 1, 2019 release date. That was not changed after the parties' license negotiations broke down, so the Series was released on iTunes on October 1. LIVN realized this about a year later and contacted Vubiquity. Both parties contacted Apple and the Series was taken down. During the year the Series was on iTunes, it generated $106.32 in

---

recently-revised Local Rule 56. The parties filed declarations, deposition transcripts, and other documentary evidence. Any objection to evidence relied on herein is overruled. All other objections are moot.

2

1  revenue for Vubiquity.

2       LIVN sued Vubiquity, originally asserting 8 claims, including for fraud. Only

3  one claim remains: for copyright infringement, for "distributing and selling unlicensed

4  Martial Universe Content to the public and doing nothing to remedy their

5  infringement until they were caught." Sec. Am. Compl. ("SAC," Dkt. No. 33) ¶ 35.

6       Vubiquity moves for summary judgment or adjudication on several grounds. As

7  discussed below, the Court finds that Plaintiff has not established standing to pursue

8  its copyright infringement claim, so the Court will not address the other grounds.

9  **II.    LEGAL STANDARD**

10       A motion for summary judgment must be granted when "the pleadings, the

11  discovery and disclosure materials on file, and any affidavits show that there is no

12  genuine issue as to any material fact and that the movant is entitled to judgment as a

13  matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

14  247–48 (1986). The moving party bears the initial burden of identifying the elements

15  of the claim or defense and evidence that it believes demonstrates the absence of an

16  issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the

17  nonmoving party will have the burden of proof at trial, the movant can prevail merely

18  by pointing out that there is an absence of evidence to support the nonmoving party's

19  case. *Id*. The nonmoving party then "must set forth specific facts showing that there is

20  a genuine issue for trial." *Anderson*, 477 U.S. at 248.

21       A genuine dispute occurs "where the evidence is such that a reasonable jury

22  could return a verdict for the nonmoving party." *Arpin v. Santa Clara Valley Transp.*

23  *Agency*, 261 F.3d 912, 919 (9th Cir. 2001). However, "[w]here the record taken as a

24  whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25  'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

26  574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-

27  movant's] position will be insufficient; there must be evidence on which the jury

28  could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

1    On a motion for summary judgment, courts view the facts in the light most

2    favorable to the nonmoving party. *Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir.

3    2009). Nevertheless, inferences are not drawn out of thin air, and it is the nonmoving

4    party's obligation to produce a factual predicate from which the inference may be

5    drawn. *Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D. Cal.

6    1985), *aff'd,* 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion

7    that a genuine issue of material fact exists" does not preclude summary judgment.

8    *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

9    **III.    DISCUSSION**

10    Vubiquity argues that LIVN lacks standing to pursue a copyright infringement

11    claim because the Series is not registered with the United States Copyright Office and

12    is not eligible for protection under the Berne Convention.

13    **A. Copyright Registration and the Berne Convention**

14    In general, a copyright owner of a United States work cannot bring a claim for

15    copyright infringement unless the work is registered with the United States Copyright

16    Office. *See* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in

17    any United States work shall be instituted until preregistration or registration of the

18    copyright claim has been made..."); 2 Melville B. Nimmer & David Nimmer, Nimmer

19    on Copyright § 7.16(B) (registration is a "prerequisite to suit for copyright

20    infringement"). It is undisputed that the Series is not registered with the United States

21    Copyright Office.

22    However, LIVN claims that even though the Series is not registered with the

23    United States Copyright Office, its copyrights in the Series are protected under the

24    Berne Convention for the Protection of Literary and Artistic Works ("Berne

25    Convention") Art. 5(1) (Paris text 1971). The Berne Convention requires signatories

26    to protect copyrights in foreign works without subjecting them to formalities like

27    registration. *See* 5 Nimmer on Copyright § 17.05 (2021) (Berne Convention generally

28    requires member states to extend to foreign authors "the same copyright protection" as

4

they "accord[] to [their] own nationals"); *see also Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 619 (9th Cir. 2010) ("As a result of the Berne Convention's mandate that foreign works not be subject to formalities, § 411's pre-suit registration requirement does not apply to non-U.S. works.") The United States is a signatory of the Berne Convention so it is required to "afford[ ] [foreign copyright holders] the same protection as holders of domestic copyrights." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1078 (9th Cir. 2022). United States copyright protection through the Berne Convention is sometimes referred to as the "foreign-works exemption" to §411(a)'s registration requirement.

Thus, a copyright holder has standing to sue for infringement of a work not registered in the United States if the work is a foreign work, but not if the work is a United States work.[2] 17 U.S.C. § 101 defines the term "United States work," and lists four disjunctive criteria relating to a published work: if the published work satisfies even one criterion, then it is a United States work, and under § 411, the copyright holder lacks standing to sue unless the copyright is registered with the United States Copyright Office.

**B. LIVN Has Not Raised a Triable Issue as to Whether the Series Is Not a United States Work.**

The parties agree that the Series does not satisfy three of § 101's four criteria for "United States work." The dispute is whether the Series is a "United States work" under the fourth criterion, which states that a work is a "United States work" if (1) "the work is first published—(B) simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States." 17 U.S.C. 101. Both parties distill this criterion to mean that a work is a United States work if it was published

---

[2] This means that under United States copyright law, foreign works are afforded greater protection than United States works.

simultaneously in the United States and in a signatory foreign nation.

As applied to this case, the issue is whether there is a triable issue of fact as to whether the Series was first published simultaneously in the United States and China, which the parties agree is a signatory, or whether it was first published in China: if the Series was first published simultaneously, it is a United States work and is not entitled to protection under the Berne Convention; if it was first published in China, it is not a United States work and is a foreign work protected under the Berne Convention. *See DigitAlb, Sh.a v. Setplex*, LLC, 284 F.Supp.3d 547, 555 (S.D.N.Y. 2018) (a work is a foreign work that enjoys the protection of the Berne Convention if it was "first published outside the United States in a foreign country that is a signatory to the Berne Convention."); *see also Joint Stock Company "Channel One Russia Worldwide" v. Infomir LLC*, 2022 WL 2530456, at *9 (S.D.N.Y. 2022) ("holders of copyrights in non-United States works need not register those copyrights in the United States as a precondition to suit under the Copyright Act – provided that the country in which the works were 'first published' is a signatory to the Berne Convention.")

"[A]lthough an owner's rights exist apart from registration, *see* § 408(a), registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Estate Public Benefit Corporation v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019). "The burden to show this [foreign work] exemption remains on the party claiming it." 2 Nimmer on Copyright § 7.16(B)(6)(d) (2022); *see also Elohim EPF USA, Inc. v. Total Music Connection, Inc.*, 2015 WL 12655484, at *4 (C.D. Cal. Nov. 19, 2015) ("[T]he party seeking to protect a work must first establish that the subject of copyright is not a United States work."); *Joint Stock Co.*, 2022 WL 2530456, at *9 ("It is the plaintiffs burden to plead and prove that the work is not a United States work.")

The evidence pertaining the Series' place of first publication is limited. Vubiquity points to screenshots showing the Series available on a public YouTube channel in 2018, and Amazon Prime's U.S.-facing video platform listing for the

6

Series, which shows a release date of August 6, 2018, and a customer review dated June 2019. UF 12, 13.[3] These facts are not genuinely disputed. Vubiquity also cites LIVN's CEO Mr. Sham's deposition testimony that the Series was first aired in China and the United States at the same time—probably August 2018. UF 11. More specifically, when asked whether the Series was licensed to air on a Chinese-language television network in the United States, Mr. Sham answered "before we acquired the rights, yes," and when asked when that happened, he stated "I don't have the exact details of that and I may be wrong, but I assume that the premiere when it happened in China might have been broadcasted if that channel [Dragon TV] is available in the U.S.," which was probably August 2018. Sham Depo. 37:18-38:9.

LIVN tries to avoid Mr. Sham's testimony, arguing that he "made clear in each and every statement cited by Defendant in support of their claim of 'simultaneous airing' that he could *only speculate* as to the release date in the U.S." Resp. UF 11 (emphasis added). LIVN further claims that "Martial Universe was first made available in China in 2017, via a Chinese broadcaster, 'Dragon TV," AF 114, and points to Mr. Sham's declaration which states "I understand that Martial Universe first aired on Chinese television on a channel called 'Dragon TV.' I do know it was released in China before it was ever made available in the United States which is why I acquired the rights for United States," Sham Decl. ¶ 6, and Exhibits A and B.

But none of LIVN's arguments help it. First, even if Mr. Sham was *only speculating* as to the U.S. publication date, that does not satisfy LIVN's burden to come forward with substantial probative evidence from which a jury could find in its favor that the Series was first published outside of the United States. *See teamLab Inc. v. Museum of Dream Space, LLC*, 650 F.Supp.3d 934, 944–45 (C.D. Cal. 2023) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to

---

[3] LIVN purports to dispute these facts but the disputes are not genuine. The Court also overrules LIVN's objections to the evidence.

raise genuine issues of fact and defeat summary judgment.") And, while LIVN's Additional Fact 114 asserts that the Series was first made available in China in 2017, the cited evidence does not support this: The cited portions of Mr. Sham's declaration do not include any date. Exhibits A and B, which are wholly unexplained, are in Chinese so the Court cannot ascertain their content. And Mr. Sham's statement in ¶ 6 of his declaration that he "understands" and "knows" that the series was first released in China before it was ever made available in the United States is without foundation and is speculative: LIVN acquired the Series in March 2019 from someone else, and Mr. Sham does not explain how or why he knows anything about its release before then.

Furthermore, as LIVN acknowledges, "publication" is a term of art. "'Publication' is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication." 17 U.S.C. § 101. "Publication occurs when copies of a work are distributed to the public without explicit or implicit restrictions and 'without regard to the manner in which the copies changed hands.' Accordingly, displaying a work of art does not constitute publication unless accompanied by a public sale or offer of sale." *teamLab Inc.*, 650 F.Supp.3d at 946. LIVN has not come forward with evidence sufficient to create a triable issue as to where the Series was first "published" within the meaning of the Copyright Act.

At best, there is an *absence of evidence* going to the Series' place of first publication. LIVN therefore cannot meet its burden to establish that the Series was first published in a Berne Convention signatory besides the United States, and therefore LIVN cannot establish that the Series is entitled to the Berne Convention's foreign work exemption to prior registration with the United States Copyright Office. LIVN therefore lacks standing to pursue its claim that Vubiquity infringed on its

1    copyrights in the Series.

2    **C. LIVN Has Not Raised a Triable Issue that the Series is Copyright-**

3    **Registered in China.**

4    LIVN also argues that the Series is registered with the Chinese State

5    Administration of Radio Film and Television ("SARFT"), and that therefore it is

6    entitled to the protection of U.S. copyright law as if it were registered with the U.S.

7    Copyright Office. This argument fails for multiple reasons.

8    First, LIVN fails to cite any law supporting its position that a work's

9    registration in a foreign nation is enough to overcome § 411's requirement that a work

10   be registered with the United States Copyright Office. If this is the law, LIVN needed

11   to present it. Nor does LIVN cite any law to show that foreign registration alone is

12   enough to evade § 101's definition of "United States work" so as to trigger the foreign

13   work exemption to § 411 and the protection of the Berne Convention. Importantly, §

14   101's definition of "United States work" for published works like the Series turns

15   entirely on where the work is first published, *see teamLab Inc.*, 650 F.Supp.3d at 945

16   ("[w]hether a work is a United States or foreign work is inextricably intertwined with

17   publication"), and not, apparently, on where it is registered. LIVN's lack of legal

18   support dooms its reliance on a purported Chinese registration.

19   But secondly, even if the law were on LIVN's side, its proffered evidence is

20   insufficient to establish that the Series is copyright-registered in China. LIVN points

21   to the declaration of Mr. Sham, which states: "Martial Universe is registered with the

22   Chinese State Administration of Radio, Film and Television ('SARFT'). Based on my

23   knowledge and experience in the industry, SARFT is responsible for managing

24   television programming in China, including licensing rights to the programming. It is

25   thus protected by the Chinese equivalent of copyright laws." Sham Decl. ¶ 7; *see also*

26   AF 106 (citing Sham Decl. ¶ 7 for statement "'Martial Universe' is registered with the

27   Chinese State Administration of Radio, Film and Television ('SARFT')".)  LIVN also

28   filed as Exhibits A and B to the Sham Declaration "[r]ecords of the chain of title and

9

records related to the content's registration in China. . ." Sham Decl. ¶ 3. This
evidence is insufficient.

First, Mr. Sham has not laid any foundation to establish that he is competent to
assert the legal conclusion, based on Chinese law, that a work registered with SARFT,
which "is responsible for *managing* television programming in China, including
licensing rights to the programming," is "protected by the Chinese equivalent of
copyright laws." And LIVN presents no evidence of what SARFT is, or what it does,
so its claim that "managing" television programming in China is equivalent to
recognizing copyrights is unsupported.[4] Nor do Exhibits A or B bridge this gap.
Exhibit A consists of untranslated documents in Chinese, along with a short English
language document that appears to be a license for the Series between two other
parties. Exhibit B is a license to LIVN. LIVN appears to contend, as asserted at oral
argument, that the Chinese language documents reflect the Series' registration with
SARFT. But because the documents are in Chinese, they fail as evidence. L.R. 11-
3.10 ("All [ ] documents must be presented in English unless . . . an English
translation is concurrently provided"). But, even if these documents did establish that
the Series is registered with SARFT, that does not establish the other necessary
premise: that registration with SARFT is tantamount copyright registration.

Accordingly, LIVN has failed to come forward with evidence sufficient to
establish that the Series is registered with SARFT, or that any such registration is
equivalent to copyright registration.

For the foregoing reasons, LIVN's reliance on the purported registration of the
Series with the Chinese SARFT office fails to establish that LIVN has standing to

---

[4] Vubiquity states in its Reply that the "managing" that SARFT does is censorship,
and that SARFT is not the equivalent of a copyright office. *See* Reply 6:17-20.
Vubiquity does not support this claim with evidence. However, it is plaintiff LIVN's
burden to present evidence supporting its case for standing, so any failure of evidence
as to what the SARFT office does means that LIVN failed to carry its burden.

pursue its copyright infringement claim against Vubiquity.

**D. CONCLUSION**

For the foregoing reasons, LIVN has failed to raise a triable issue of fact that it has standing to pursue its copyright infringement claim against Vubiquity. Vubiquity's Motion for Summary Judgment is therefore **GRANTED** on that basis.

Vubiquity is **ORDERED** to file a proposed Judgment within 5 days of this Order. LIVN has 5 days thereafter to object as to form.


**IT IS SO ORDERED.**


Dated: May 31, 2024

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE